HILTON, *Appellant*, v. THE CITY OF ST. LOUIS ; SMITH, *Interpleader*.

1. **City of St. Louis :** CONDEMNATION PROCEEDINGS : PROCEDURE. The city of St. Louis has the right under its charter, as also under the state constitution, to pay into court the money assessed against it in a street condemnation proceeding, where there is a controversy as to whom the damages belong.

2. ———— : ———— : INTERPLEADER. It is proper for the city in such case, when sued for the amount of the assessment, to file an answer in the nature of a bill of interpleader.

3. ———— : ———— : VOLUNTARY APPEARANCE OF A PARTY. One claim-ing to be the true owner of the land may enter his voluntary appearance to the suit for the damages assessed and assert his claim thereto.

Hilton v. The City of St. Louis.

4. **Pleadings:** VERIFICATION BY AFFIDAVIT. Pleadings under our system are not required to be verified by affidavit.

5. **Condemnation Proceedings:** PURCHASER OF LAND : TITLE TO DAMAGES. The purchaser of the land subsequent to the assessment of, damages does not, by virtue of his deed, acquire title to the damages, even though they are not expressly reserved in the deed.

6. ———: INTEREST. Semble that, in condemnation proceedings, interest ought not to run on the damages assessed while the original owner remains in its undisturbed possession.

*Appeal from St. Louis City Circuit Court.*—HON. GEO. W. LUBKE, Judge.

AFFIRMED.

*M. Hilton* for appellant.

(1) The city of St. Louis is liable for interest from the date plaintiff demanded payment. *Mickey v. Philadelphia*, 68 Pa. 48; *City v. Dyer*, 5 Wright, 463; *Chicago v. Wheeler*, 25 Ill. 478; R. S. 1879, secs. 2723, 2725. (2) The answer of the defendant, the city of St. Louis, admits the truth of every allegation of plaintiff's petition, hence the plaintiff was entitled to judgment, in compliance with the prayer of the petition. His motion for judgment should have been sustained. *Boyer v. Hamilton*, 21 Mo. App. 521; *Byington v. Hogan*, 58 Mo. 509. (3) There is no law, or rule of practice in this state, authorizing a cross-bill for an interpleader in answer to an action at law for debt. It is not an equitable defense known to equity practice, and, in providing for setting up equitable defenses to an action at law, the code meant only such defenses as were known in chancery practice as equitable. The practice in Missouri remains the same as it was in England prior to the interpleader act, and as in New York, prior to section 122 of the New York Code, the only mode being by original bill in equity. It follows that

the new matter in the city's answer was no defense; the motion to strike it out should have prevailed. Simon on Interpleader [2 Ed.] p. 10; N. Y. Code, sec. 122; *Howell v. Stewart*, 5 Mo. 400. (4) There is no authority at common law or statutory in Missouri for a stranger to a suit at law for a debt to intervene therein on the ground that the debt is owing to him instead of to the plaintiff. The court should have complied with plaintiff's motion to strike Huntington Smith's entry of appearance from the files. *Kohjohn v. Seinerd*, 29 Mo. 271; *House v. Water Co.*, 13 Cal. 62; *Judd v. Young*, 7 How. 79. (5) Section 11, article 6, of the city charter, is no authority for the payment of the damage into court in this case. It applies only to the special proceeding for opening streets, being one of the provisions regulating that proceeding; but, as such, it is inoperative, for the reason that section 10 calls for an ordinance to regulate the payment when made into court, and no ordinance has been enacted in the premises. St. Louis charter, sec. 10, art. 6.

*Leverett Bell* for respondent, city of St. Louis.

(1) At the commencement of this action the city of St. Louis had not taken possession of the property in question. The property could not be disturbed, nor the proprietary rights of the owner therein divested, until the damages allowed in the condemnation proceeding were paid to the owner, or into court for the owner. Section 21, article 2, state constitution. If the ownership of the property condemned was in controversy (as was the fact here) the damages were required to be paid into court for the use of the successful claimant of the property. 2 R. S., p. 1607; section 11, article 6, of the city charter. (2) There is no testimony as to the manner in which Hilton acquired title. It is not known whether he claims under Tanner as assignee or otherwise. His appearance in the case by substitution on

April 17, 1884, is the first claim asserted by him to the fund, and, on June 27, 1884, the city paid the money into court, as it had the right to do under section 11,. of article 6, of the city charter. 2 R. S., p. 1607. (3) The law governing the practice of the courts in bills of interpleader has no application to this case. The judgment below is based upon the charter provision above referred to.

SHERWOOD, J.—The city of St. Louis instituted condemnation proceedings to open Park avenue from Jefferson avenue to Grand avenue. This was in February, 1880, and Dougherty *et al.* were defendants. The result of these proceedings was that damages were assessed in favor of the owner of lots 5, 6 and 7, in city block 1282, at the sum of $1,940.40.

On the thirtieth day of March, 1881, the city passed an ordinance appropriating money to pay said damages, which ordinance went into effect, April 30, 1881. This suit was brought by Mary E. Tanner, on November 19, 1881, for the damages assessed, she claiming to be owner of said lots. On the fourteenth of April, 1884, she filed her second amended petition, for the damages, and among other things alleged that, on the thirtieth of June, 1881, she demanded payment of the city of said damages, which the city refused to pay. On April 17, 1884, on the joint motion of Mary E. Tanner and Silas D. Hilton, the latter was substituted in this action in the lieu and stead of Mary E. Tanner. On the tenth day of July, 1881, Joseph S. Dobyns, attorney for Huntington Smith, made a demand on the city for the sum already mentioned. Smith was not a party to the condemnation proceedings, nor, so far as it appears, were Tanner or Hilton.

On June 27, 1884, the city, acting under the provisions of section 11 of article 6 of the city charter, 2 Revised Statutes, page 1607, to-wit, that, " If the

ownership of property condemned be in controversy, the amount of damages, assessed for said property, shall be paid into court for the use of the successful claimant of the property," paid the money assessed as damages into court. On November 21, 1884, the city filed a second answer. Among other things the answer set up were that the city had paid into court, etc., as already stated; that not only Silas D. Hilton claimed to be the owner of the property, and as such entitled to the damages aforesaid, and had notified the defendant not to pay the same to any one but himself, but that Huntington Smith and Wm. D. Griswold also made like claims to said lots and the sum assessed as damages, and prayed that Smith and Griswold might be made parties to the action and required to interplead for said damages; and that defendant be discharged from further liability in this cause, etc.

On January 5, 1886, Griswold entered his voluntary appearance, and a disclaimer.

On the same day, Huntington Smith entered his voluntary appearance, claimed to be the true owner of the lots, and of the sum assessed as damages.

The plaintiff introduced no evidence in support of his claim, and objected to any being introduced on the part of the city and on the part of Huntington Smith. But the court permitted evidence to be introduced showing that the city did pay the sum aforesaid into court in accordance with the charter; and it was also shown that Dobyns, as attorney of Smith, had made demands, on July 10, 1881, of the city for the amount of damages assessed. At the close of the testimony the plaintiff asked the following declarations of law, which the court refused to give:

"1. The court declares the law to be that upon the pleadings and evidence in this case the plaintiff is entitled to recover.

"2. The court declares the law to be, upon the pleadings and evidence in this case, plaintiff is entitled to a judgment in this case for the sum of $1,940.40, with interest thereon from the thirtieth day of June, 1881, to date of judgment."

The court thereupon entered the following decree: '"The court, having seen and fully considered the motion of plaintiff to strike from the files of this court the entry of appearance and reply of said Huntington Smith to the second amended answer of the city of St. Louis in this cause, doth now overrule said motion. And the court being now also fully advised as to the matters in issue in this cause presented by the second amended answer of cross-petition of defendant, the city of St. Louis, filed in this cause, doth find in favor of said defendant, the said city of St. Louis, and doth find that heretofore, under an ordinance of said city, entitled 'An ordinance to establish and open Park avenue from Jefferson to Grand avenue,' approved March 11, 1880, proceedings were had in this court at the suit of said city, whereby, on February 21, 1881, a final decree was entered condemning for public use all that part of lots numbered 5, 6 and 7, in block 1 of Compton Hill addition to the city of St. Louis, and in city block 1282 of said city, fronting seventy-five feet on the south line of Park avenue, as laid out in said addition, by a depth south on the west line of lot seven of nine feet, four and five-eighths inches, and on the east line of lot 5 of nine and six-twelfths feet, to the south line of said Park avenue as established by city ordinance number 11,314, and all that part of said lots numbered 5, 6, 7, embraced within the lines of said Park avenue; that in and by said proceedings of condemnation the net sum of $1,940.40 was assessed as the damages which the owners of said realty so condemned would sustain by the taking thereof for public use as aforesaid; that afterwards,

on March 30, 1881, by another ordinance of the municipal assembly of said city approved that day, there was appropriated and set apart out of the fund of that city, for street openings, a sum sufficient to pay the damages of $1,940.40 aforesaid ; that thereupon one Mary E. Tanner, to whose rights the plaintiff, Silas D. Hilton, has since become assignee, claimed to be the owner of said realty so condemned, and demanded of defendant the payment of said damages, and that thereupon one William D. Griswold also claimed to be the owner of said realty, and demanded of defendant payment of said damages, but that William D. Griswold since that time here, in open court, filed and announced a complete disclaimer of any right to said damages, and that, after said proceedings of condemnation were had, the said Huntington Smith also claimed to be the owner of said realty, and demanded of defendant the payment of said damages; that neither the plaintiff nor Huntington Smith have here averred or shown that the defendant, the city of St. Louis, has taken possession of said realty in virtue of said proceedings of condemnation, or tendered to either of them absolutely payment of said damages, or deposited the same in court for them in said condemnation proceedings. Wherefore, the court doth now consider, adjudge and decree that, at the commencement of this action by Mary E. Turner, she was not entitled to recover said sum of damages, but had only the right to enjoin and restrain defendant from taking possession of said realty until said damages had been paid or deposited in court for the parties in interest in said realty. And the court further finds that, therefore, on June 27, 1884, and after the filing of plaintiff's second amended petition in this cause, the defendant, the city of St. Louis, did deposit here in court, in this cause, the said sum of $1940.40, the damages so assessed as aforesaid, and that said sum has ever since been and now still is on deposit with the clerk of this court, subject to

the plaintiff, Silas D. Hilton, setting forth his title, claim and demand to said fund ; that, upon compliance by said Huntington Smith with this order, the said Silas D. Hilton shall plead to said petition of said Huntington Smith within ten days, and that thereafter this cause shall proceed to a final hearing and decree between said parties, and the court now reserves the question of costs between said parties until such final hearing and decree.''

I. Under the provisions of section 11, article 6, of the city charter, 2 Revised Statutes, 1879, p. 1607, the city very properly paid the money into court, there being a controversy as to whom the amount belonged ; and the assembly did appropriate the money and provide by ordinance 11,679, for the payment of the same, as required by section 10 of the charter. And, apart from the ordinance, the city complied with a similar provision of the constitution, which, if an ordinance were lacking, would have supplied any such lack. Const., sec. 21, art. 2 ; *K. C., C. & S. Railway Co. v. Story*, 96 Mo. 611. Besides under its bill of interpleader, the city was entitled, in order to support that bill, to bring the money into court. 2 Story's Eq. Jur., sec. 809. On either of the above-mentioned grounds, then, the payment of the money into court was an authorized act.

II. The city, being in doubt as to whom the amount paid into court belonged, pursued the proper course in filing an answer containing the elements of a bill in the nature of a bill of interpleader. 2 Story, Eq. Jur. [13 Ed.] sec. 824. See also *Ib.*, secs. 807, 808, 810, 811 *et seq.* And it has been ruled that a court, before which the proceedings are pending, has the ''power to cause rival claimants, to the damages awarded, to interplead;'' and that it is the duty of the condemning party '' to bring in all parties having an interest in the estate, in order that the condemnation money may be properly

applied." *Gerrard v. Railroad*, 14 Neb. 270. In another case the party out of possession, but claiming to be the true owner, was directed to bring ejectment within a month, for the purpose of trying this title. *Hatch v. New York*, 82 N. Y. 436. See also Lewis' Eminent Domain, sec. 627. And it is the theory and requirement of our practice act, that all parties in interest shall be brought in, and thus have all conflicting interests adjusted. This duty is enjoined on the trial courts by statutory enactment, and has been sanctioned, also, by several of our decisions. R. S. 1879, sec. 3568 ; *Hayden v. Marmaduke*, 19 Mo. 403 ; *Butler v. Lawson*, 72 Mo. 431 ; *O' Fallon v. Clopton*, 89 Mo. 284.

III. Now if the protection of the city demanded the filing of an answer in the nature of a bill of interpleader, and if it was the duty of the court, upon noticing the defect, to cause new parties to be brought in, of its own motion, it is difficult to see what error could arise where one of such parties who should have been brought in, and would have been brought in, anticipated the summons of the court, came in, submitted himself to the jurisdiction of the court ; filed his pleading and asserted his claims. These remarks show the correctness of the action of the trial court in refusing to allow the respective motions of the plaintiffs to prevail, to strike out that portion of the city's answer in the nature of a bill of interpleader.

IV. In the same light, is to be regarded the action of the court in regard to the necessity of the answer of the city being verified by affidavit. Such was the course pursued in the old chancery practice ( 2 Story's Eq. Jur., sec. 809 ) ; but under our practice act, pleadings require no such verification. An intimation to the contrary was made in *Merchants' Nat'l Bank v. Richards*, 74 Mo. 77, but we do not approve it.

V. As Hilton, the substituted plaintiff, seems to have adopted the petition of Mary E. Tanner, and

made no allegations of his own, and, inasmuch as he introduced no evidence as to his title or his claims, there is no clue furnished to ascertain just what his *status* is. Did the former plaintiff transfer to him her title to the damages assessed, or did she only transfer to him her title to the *lots?* This record fails to give any answer to this question. If Hilton was only the purchaser of the lots subsequently to the damages being assessed, such damages would not pass to him by the deed of Tanner if he received one, even though such damages were not specially reserved in the deed. *Losch's Appeal*, 109 Pa. St. 72; Lewis, Em. Domain, secs. 338, 538. If Hilton has not shown himself entitled to the damages, then he can raise no question about interest thereon.

Furthermore, it does not appear what is the nature of the property in question, whether vacant or occupied by houses. But it is nowhere shown or averred, and so the decree recites, that the city has ever taken possession of the premises. If so, then it would seem that interest ought not to run while the party claiming it remains undisturbed in the possession of the premises. Moreover, some consideration is to be given to the fact that Hilton, though substituted as plaintiff, seems to have remained inactive in the prosecution of the suit, which from all appearances could have been terminated long ago.

In the light of all these facts, we affirm the judgment. All concur.