## PLUM, *Appellant*, v. THE CITY OF KANSAS.

1. **Condemnation Proceeding: INTEREST: KANSAS CITY CHARTER.**
In a proceeding under the charter of Kansas City, to subject private property to public use for street purposes, interest runs upon and from the date of the judgment of the circuit court confirming an award of damages for land so taken.

2. ——: ——: ——. A provision of the charter apportioning, interest at fifteen per cent. per annum collected on assessments for benefits among owners of land taken, *held* not to prevent running of interest in favor of the latter on the judgment of condemnation.

3. ——: ——. Such judgment is within the meaning of the statute giving interest upon judgments and orders for the payment of money.

4. **Statutes, Construction of.** It is a rule of construction to resolve any ambiguity in a statute so as to consist with natural justice, without violence to settled legal principles.

5. **Equity.** He who asks equity must do equity.

6. **Condemnation Proceeding: RENTS AND PROFITS.** Where an owner recovers interest on an award of damages for land taken for public use he must account for rents and profits from the time of the taking.

7. ——: **JUDICIAL POWER.** Condemnation cases in this state involve the exercise of judicial power.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

REVERSED AND REMANDED.

THIS is an action to enjoin the city of Kansas from taking possession of a parcel of land, regularly condemned for public use as a street, until the payment of proper compensation therefor.

The city of Kansas passed an ordinance to extend Independence avenue, October 3, 1882. Proceedings were begun under it to acquire the land of plaintiff, as

well as of others, for public purposes as part of that thoroughfare. In due course a verdict of the mayor's jury, in those proceedings, directed by the charter (Sess. Acts, 1875, p. 244, art. 7) was confirmed by the common council of that city in an ordinance of December 30, 1882, assessing the amount of compensation for plaintiff's said property at thirteen thousand, two hundred dollars.

Plaintiff did not appeal or take any steps to vacate this assessment; but other parties to the proceedings appealed to the circuit court, and afterwards to the supreme court, whereby a long delay ensued, during which the city did not take actual possession of the property. Ultimately the judgment of condemnation was affirmed. The municipal authorities then tendered plaintiff for his land the amount of damages awarded as already stated with a small additional sum ($223.80) which was the plaintiff's proportionate share of all the interest collected on the total "benefits" assessed against the adjacent property in the proceedings mentioned. This additional sum was tendered pursuant to a provision of the city charter to the effect that interest collected upon delayed payments of "benefits" should be apportioned and paid equitably to the owners of the property taken.

Plaintiff insists that the award of damages in his favor bears interest from the date of judgment of condemnation, and that, until the amount thereof is either paid or tendered, the city cannot lawfully take possession of the property in question condemned for public use. The city denies that contention. The facts of the case are not disputed. The controversy is merely as to the proper legal conclusion from those facts. The trial court found for the defendant, and entered judgment to that effect.

The plaintiff after the proper motions and exceptions appealed. All other material facts appear in the opinion.

*John W. Wofford* for appellant.

( 1 ) The proposition of appellant is, that from the time the city took his property by its proceedings in court, and the approval of the same by the council, up to the payment of appellant by the city for it, that the city is liable to appellant for interest on its assessed value, to-wit, thirteen thousand and two hundred dollars, that is from December, 1882, to May, 1887, when payment was made. City Charter, sec. 5, art. 7; Session Laws, 1875; *H. B. v. Co. Com'rs*, 103 Mass. 120; Bill of Rights, Const. of Mo., sec. 21; Mills, Em. Domain [2 Ed.] secs. 175, 176, 177; *Parks v. Boston*, 15 Pick. 198; *Old Colony v. Miller*, 125 Mass. 1; *Edwards v. Boston*, 108 Mass. 535; *Boston & R. M. Corp. v. Newman*, 12 Pick. 467; *Leisse v. Railroad*, 2 Mo. App. 106, 107; s. c., 72 Mo. 562; s. c., 5 Mo. App. 585; *Matter of Water Com'rs of Jersey City*, 2 Vroom (N. J.) 72; *Bank v. Railroad*, 49 Vt. 167. ( 2 ) The verdict and judgment of the lower court vested the right, and the supreme court merely declared the legal fact which had existed from the rendition of the verdict. *Bank v. Railroad*, 49 Vt. 167; *Stacey v. Railroad*, 27 Vt. 39; *Railroad v. Lackland*, 25 Mo. 532; *Leisse v. Railroad*, 2 Mo. App. 105; *State v. Hay*, 44 Mo. 116; *Railroad v. Nesbit*, 10 How. 395; *Lancaster v. Kennebec County*, 62 Maine, 272; *State v. Keokuk*, 9 Iowa, 438; *Wilkerson v. Buchanan County*, 12 Mo. 328; *Matter of M. P. G.*, 60 N. Y. 319; *Farmer v. Hooksett*, 28 N. H. 244; *Blockshire v. Railroad*, 13 Kan. 514; *Matter of W. P.*, 56 N. Y. 144; *Martin v. Mayor of B.*, 1 Hill, 545; *Matter of Canal St.*, 11 Wend. 155.

*C. O. Tichenor* for respondent.

( 1 ) The meaning of just compensation is that the owner shall not be deprived of his possession without at the same time receiving an equivalent for it. *Walther v. Warner*, 25 Mo. 286. And, until the assessed

damages are paid to the land-owner, the title continues in him. *Green v. Railroad*, 82 Mo. 657 ; *St. Louis v. Evans*, 85 Mo. 336. ( 2 ) Until possession has been taken, interest cannot be allowed ; so long as the owner holds possession and has the use, the compensation should not bear interest ; in other words, the possession and use of the property must be regarded as an equivalent for interest. *Com'rs v. Dunbery*, 91 Ill. 57 ; *City v. Palmer*, 93 Ill. 125 ; *Phillips v. Com'rs*, 119 Ill. 645 ; *City v. Barbian*, 80 Ill. 482 ; *Cook v. Com'rs*, 61 Ill. 122 ; *City v. Reynolds*, 31 Ill. 529 ; *Railroad v. McClintock*, 68 Ill. 296 ; *Edmunds v. Boston*, 108 Mass. 551 ; *Hammersly v. The Mayor*, 56 N. Y. 533 ; *Com'rs v. Freeholders*, 15 Vr. 570 ; *Stewart v. County*, 2 Barr 340 ; *Railroad v. Brunson*, 61 Pa. 570 ; *Corell v. Cole*, 16 Mich. 223.

BARCLAY, J.—The issue of law here is whether or not interest runs upon the award of damages assessed as compensation for land taken for public use by the judgment of the circuit court, pursuant to the terms of the Kansas City charter of 1875. Sess. Acts, 1875, p. 244, art. 7.

The situation of the parties in interest relative to the subject of controversy is this :

Neither the plaintiff nor the city was dissatisfied with the original award fixing the value of plaintiff's property with a view to its appropriation to public use. The long delay in reaching the end of the condemnation case arose from the acts of other parties. During it the plaintiff remained in possession of the land, but his enjoyment and use thereof were not such as belonged to complete ownership. His tenure, then, might be characterized as a sort of base or qualified fee, liable to be determined at any moment by the issue of the appellate proceedings. He could not, with any degree of confidence, improve the property, or make any but the most transient agreements for its use. He could not

dispose of it except subject to the paramount public easement which had become impressed upon it. So far as concerned his beneficial rights as owner, the judgment of condemnation amounted to the "taking" of the property for public use, and the price for such taking then became justly due him.

On this state of facts we are to determine whether plaintiff is entitled to interest during the years of delay which intervened between the date of judgment by the circuit court, and its affirmance on the appeal taken by other parties. No claim is made by him here for interest from any earlier date.

The case in hand is governed by a charter prescribing with some minuteness the steps to be taken to subject private property to public use for street purposes in Kansas City. It provides that, after the passage of an ordinance by the common council for establishing or opening a street, and the establishment of limits within which private property may be charged with benefits from the proposed improvement, the mayor shall conduct the proceedings, and ascertain, by verdict of a jury of disinterested freeholders of the city, the amount of compensation to be paid for any land sought to be taken, and the amount of benefits properly chargeable against the city generally and against the adjacent parcels of property within the district prescribed. Notice to all interested is provided for. After the verdict is rendered it is reported by the mayor to the city council, and, unless a proper appropriation, in accordance with the proceedings had, is made by the latter within sixty days thereafter, the whole proceedings are void. If, however, the verdict, etc., be confirmed by the council, any party in interest may within the next twenty days appeal to the circuit court of the county where the cause is then triable "*de novo.*" New parties may there be brought in, if necessary, and, after a finding or verdict (if confirmed by the court), "judgment shall be entered thereon that the city have and hold the

property sought to be taken for the purposes specified in the ordinance providing for the improvement, and pay therefor the amount assessed against the city, and full compensation assessed therefor, and that the several lots and parcels of private property, assessed to pay compensation by the verdict or finding, stand charged and be bound respectively for the payment of assessments, with interest, as provided in this act, and such judgment shall be enforced by special execution to collect assessments as aforesaid, without special tax bills, and the court or judge may, by execution or otherwise, put the city in possession of the property taken, or any part thereof, the full compensation therefor being paid or tendered." Sess. Acts, 1875, p. 249, sec. 6.

A record of these proceedings is required to be preserved by the city clerk.

If the city fails to collect any assessment for benefits in whole or in part, it may pay the amount not so collected out of the city treasury.

The foregoing is a sufficient sketch, for the purposes of this case, of the material parts of the act in question.

It is evident from these provisions that, at least as between the city and the property-owner, such judgment of the circuit court, as is mentioned, should be treated as a final one. The title to the land is thereby vested in the city for public purposes. The then price thereof is ascertained. The charter is silent as to interest upon the compensation adjudged for the property taken, though it provides for a recovery thereof at the rate of fifteen per cent. per annum upon all assessments for "benefits" not met within ten days from the confirmation by the city council.

The general law of the state, however, declares that "interest" (namely, at six per cent. per annum) "shall be allowed on all money due upon any judgment or order of any court from the day of rendering the same until satisfaction" (Revised Statutes, 1889, sec.

5974); and we think the obvious demands of justice, no less than the clear intent of the written law, require its application to such judgments as that before us.

Under our constitution and laws the judicial department of the government is properly invested with the hearing and decision of cases for the condemnation of private property for public use, and the ascertainment of compensation therefor. By the former it is declared that, "whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and as such judicially determined, without regard to any legislative assertion that the use is public." Const. 1875, art. 2, sec. 20.

"That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law." Const. 1875, art. 2, sec. 21.

By the statute before us the adjudication is expressly denominated a "judgment," and its effect is clearly such. It passes the record title, and adjudges that the city pay the full compensation fixed as the equivalent therefor.

The proceedings by which the result is reached, in their essential nature, involve the exercise of judicial power. *Kohl v. United States* (1875), 91 U. S. 375; *Dolan v. Mayor* (1875), 62 N. Y. 472; *Mayer v. Mayor of New York* (1886), 101 N. Y. 284.

It has been held elsewhere that final adjudications of this kind are judgments within the meaning of the statutes of limitations (*Mayor v. Colgate* (1854), 12 N. Y. 148); and of appeals (*Phillips v. Pease* (1870), 39 Cal. 582); and within the rules governing collateral attack thereof (*In the matter of Public Parks* (1878), 73 N. Y. 560). By our court it has been assumed that

they should be so regarded with reference to the law governing appeals from "any final judgment or decision." R. S. 1889, sec. 2246; *City v. Thomas*, 100 Mo. 223.

Whatever the proper rule may be for their construction in this regard, under statutes making them merely tentative, or expressly or impliedly postponing their final effect, it seems measurably clear that under such provisions of law as those now before us they should be classified as judgments or orders for the payment of money within the meaning of the interest act. This appears to have been already intimated as the correct rule in *Mississippi River Bridge Co. v. Ring* ( 1874 ), 58 Mo. 497.

The view we take of the subject will be found in harmony with many expressions of opinion by courts of our sister states, though differences in the statutes under construction impair the direct applicability of some of the cases cited to that at bar. *Beveridge v. Commissioners* (1881), 100 Ill. 75; *Philadelphia v. Dickson* ( 1861 ), 38 Pa. St. 247; *Norris v. Philadelphia* ( 1872 ), 70 Pa. St. 333; *Parks v. Boston*, 15 Pick. 198; *Old Colony Ry. Co. v. Miller* ( 1878 ), 125 Mass. 1; *Warren v. Railroad* ( 1875 ), 21 Minn. 424; *Burlington & M. Ry. Co. v. White* ( 1889 ), 44 N. W. Rep. ( Neb.) 95; *Fink v. Newark* ( 1878 ), 40 N. J. Law, 11.

The remark in *Hilton v. St. Louis* ( 1889 ), 99 Mo. 199, that, perhaps, interest should not run in such cases, while the party claiming it remained undisturbed in the possession of the premises, was not essential to the decision of that case, and upon further consideration we are not inclined to adhere to it as an authoritative statement of the rule governing this case for reasons we state herein.

II. The present appeal does not call for an extended discussion of the meaning of that section of the charter which provides that interest collected on

assessments for benefits shall be apportioned and paid equitably to the owners of the property taken. The interest referred to is collectible at the rate of fifteen per cent. per annum by the terms of the charter, this high rate being obviously fixed to stimulate prompt payment. If it were retained by the city it would result, in some instances, that the latter would receive a larger sum for "benefits" than it paid for the real property taken. The section mentioned was probably intended to avoid that possibility by requiring the interest on "benefits" to be apportioned among those whose land is appropriated, by way of compensation additional to that awarded by the judgment rather than to have it kept by the city without any just claim thereto.

Be this as it may, we see nothing in this section that implies that the city, after such a judgment as indicated by the statute under review, may indefinitely postpone assuming possession of the land condemned, depriving the owner, meanwhile, of many of the most valuable attributes of his legal title, and then, upon paying him only such interest as may ( or may not ) have been collected on the assessments for "benefits," compel him, years later, to accept the same price for his land which was fixed as a just compensation at the date of the judgment. Such interpretation we would not regard as in accord with those fundamental ideas of fairness of which law should always be an expression.

It is a useful and safe rule of construction to resolve any ambiguity or obscurity in a statute in favor of such reading of it as will best meet the demands of natural justice so far as that can be done without violence to settled legal principles.

We do not, therefore, consider the section before us as having any bearing adverse to the ruling we have announced of the effect of such a judgment of condemnation as this case presents, with regard to bearing interest.

On the other hand we do not assent to the contention of plaintiff that it was intended by that section to provide for a like rate of interest upon "benefits," (namely, fifteen per cent.) and upon awards of compensation for lands taken. The latter do not carry a higher rate than six per cent. regarded as judgments.

III. The present suit is in equity, and aims to enjoin the city from taking possession of the land in question without paying lawful interest on the award of damages from the date it became final as between these parties. It is, therefore, incumbent on plaintiff, before obtaining relief, to do equity by accounting to defendant for such rents and profits as accrued to him from the possession of the land since that date. The theory on which plaintiff's case proceeds is that the final judgment of condemnation was the "taking" of plaintiff's beneficial title. Assuming that theory correct it would be inequitable to permit him to recover interest on that judgment and retain the benefits of the possession held by him meanwhile (in contemplation of equity at least) as trustee for the city. *West v. Railroad* ( 1883 ), 56 Wis. 318; *Uniacke v. Railroad* ( 1886 ), 67 Wis. 108.

The judgment is reversed and the cause remanded for such further proceedings as may be in accord with the rulings here made. RAY, C. J., and BRACE, J., concur. SHERWOOD and BLACK, JJ., dissent.