MARTIN, *Executor*, v. THE CITY OF ST. LOUIS, *Appellant.*

### Division Two, May 25, 1897.

1. **Condemnation Proceedings:** INTEREST ON THE AWARD. The owner of land which has been condemned to public use, is entitled to interest on the amount of the award from the date of final judgment until the money is paid to him or paid into court for him, as on judgments in other causes.

2. ———: ———: PAYMENT OF PRINCIPAL. If such owner accepts payment of the amount of the award as full satisfaction of his claim up to the time of the payment, he can not afterward sue for the interest thereon; but if he accepts such principal sum upon agreement that it shall not prejudice his right to claim interest, he can afterward sue and recover interest from the date of final judgment up to the time of the payment to him of the principal sum.

3. ———: ———: PAYMENT INTO COURT. Under the charter of the city of St. Louis, if there is a dispute as to who is the actual owner of the land condemned, and the city desires to avoid the payment of interest, her duty is to pay into court the amount of the judgment rendered against her.

*Appeal from St. Louis City Circuit Court.*

AFFIRMED.

*W. C. Marshall* for appellant.

(1) In no event can the judgment be considered final so that interest can be calculated thereon earlier than the date of the passage of the appropriation ordinance by the city. The judgment of the circuit court

was liable to become an absolute nullity in the event the municipal assembly failed to make the appropriation to pay the damages, and therefore the judgment of condemnation became a finality only when the appropriation bill passed. (2) On neither of these dates, however, was plaintiff entitled to receive the money. Up to this time and until Green dismissed his appeal in the partition suit, plaintiff's right to this fund depended upon the result of the partition suit. The assessment of damages for the property taken was not in favor of plaintiff, but all of the owners of the whole tract, being parties defendant, which might be plaintiff alone, or might be plaintiff, Green and all the other owners. In other words the city was not obliged to decide whether plaintiff, or Green or both, were the owners, but it had a right to condemn the property, no matter who owned it. If the city had paid the damages to plaintiff, and if the judgment in partition had been reversed by the Supreme Court on Green's appeal, and thereafter this particular piece had been allotted to Green or some of the other owners, instead of to plaintiff, the city would have been compelled to pay the amount over again to whomever the piece taken was finally allotted to. The amount involved is no small sum, and I know of no law that compels the city to risk the payment of such an amount to a person whose title can not be shown to be, and in this case was not, an indefeasible title. (3) Promptly after the final judgment the city made the appropriation and stood ready to pay the money. If Green, Martin and the other defendants had joined in a demand, the city would have made the payment immediately. But inasmuch as the title was in dispute, and the city could not determine who would ultimately become the owner of it, the city could not safely make the payment. (4) The great weight of authority is that interest

does not begin to run until the city takes possession of the property. *Railroad v. Cella*, 42 Ark. 528; *Young v. Harrison*, 17 Ga. 30; *Chicago v. Palmer*, 93 Ill. 125; *Railroad v. McClintock*, 69 Ill. 296; *Cook v. Park Commissioners*, 61 Ill. 115; *Hayes v. Railroad*, 64 Iowa, 733; *Cohen v. Railroad*, 34 Kan. 158; *Railroad v. Owen*, 8 Kan. 409; *Railroad v. McComb*, 60 Me. 290; *Gay v. Gardiner*, 54 Me. 477; *Boles v. Boston*, 136 Mass. 398; *Chandler v. Jamaica Pond Aqueduct*, 125 Mass. 544; *Kidder v. Oxford*, 116 Mass. 165; *Reed v. Railroad*, 105 Mass. 303; *Whitman v. Railroad*, 89 Mass. (7 Allen) 313; *Minneapolis v. Wilkin*, 30 Minn. 145; *Knauft v. Railroad*, 22 Minn. 173; *Warren v. Railroad*, 21 Minn. 424. (5) Other cases may be found holding that interest should be computed from the date of the judgment, and others that it should be computed from the date of the appropriation, the amount thereof to be reduced by the beneficial value of the possession to the owner until entry is made, but such cases will not bear the test of reason or logic. Especially is this the fact, when the city stands ready to pay the judgment, and the plaintiff or some third person causes a delay by an appeal, over which the city has no control. (6) This general statute in reference to interest on judgments can have no proper application to summary, special proceedings like condemnation proceedings, which are essentially different in form and procedure from the whole of the practice act of the State, and as to which a complete system has been established by the charter of the city, and this system does not provide for interest on a judgment. (7) Interest is of two kinds. *First*, a sum agreed expressly, or impliedly, to be paid by one person to another for the use of a specified sum of money for a designated time; or, *second*, a penalty which the law imposes on a debtor for a failure to pay a sum due as and when it is due. This case does not

come under the first designation, neither can it be brought within the second designation for the city always stood ready to pay the principal from the moment the appropriation bill was passed.

*James P. Maginn* for respondent.

(1) The circuit court rightly overruled defendant's demurrer. R. S. 1889, sec. 5974; *Plum v. City of Kansas*, 101 Mo. 525; *Webster v. Railroad*, 116 Mo. 114; *Snyder v. Cowan*, 50 Mo. App. 430; *Pennsylvania S. V. Co. v. Ziemer*, 124 Pa. St. 560; *H. B. v. Co. Commes*, 103 Mass. 120; Mills, Eminent Domain [2 Ed.], secs. 175, 176, 177; *Parks v. Boston*, 15 Pick. 198; *Weiss v. Borough, etc.*, 136 Pa. St. 294. (2) Interest runs from the time when the right to take is complete in the condemning party. *United States v. Engeman*, 46 Fed. Rep. 898; *Old Colony v. Miller*, 125 Mass. 1; *Edwards v. Boston*, 108 Mass. 535. Under the authority of *Plum v. Kansas City, supra*, it seems clear that interest should be computed from May 29, 1891, upon the commissioner's award. (3) It rests with the city to avoid the judgment by failure to appropriate, or, if it adopt and ratify the judgment and take the property, it must pay for it as of the date of the judgment; or the city may avail itself, if disposed, of the full term granted, but when it comes to pay it must pay with interest. This seems to me the only fair, equitable and sensible interpretation. Otherwise the city might, in many cases, as in the present case, after final judgment, and its solemn resolution confirming the award and thereby producing said judgment divesting the owner of his property, keep him out of his property and its value for nearly two years without any compensation, a view which is so utterly unreasonable that it can not have been intended by the lawmakers and which is violently opposed to

the constitutional theory of just compensation. (4) The pendency of the appeal in the partition suit of *Martin v. Green* was immaterial. It was the duty of the city to pay the money into court for the owners when ultimately ascertained. R. S. 1889, sec.11, p. 2122; *Hilton v.St. Louis*, 99 Mo. 199. Had it done so, the plaintiff, the true owner, as he at all times was, though only finally judicially so declared by the dismissal of Green's appeal, could have readily had the money, under order of the court, securely invested at interest, pending the appeal. (5) It is an equally novel proposition, that Mr. Green and his bondsmen should pay the interest to plaintiff, on the theory that the wrongful appeal prevented the city from paying the money to the true owner. Why did not the city pay into court for the use of the owners? Mr. Green's appeal did not prevent that in any way.

GANTT, P. J.—This is an appeal by the city of St. Louis from a judgment of the circuit court of St. Louis in favor of Edward Martin for $5,743.08 against said city, on May 29, 1894. Pending the appeal in this court, Mr. Edward Martin died and upon proper proceedings the cause has been revived in the name of his executor. The judgment was rendered upon demurrer. The facts stand admitted and are as follows:

The city of St. Louis, by its ordinance number 15439, approved February 14, 1890, established Tenth street in said city as a public highway sixty feet wide from Washington avenue to Christy avenue, the center line of said street to run three hundred and one feet east of and parallel with Eleventh street, and authorized the city counselor to cause said Tenth street to be opened according to law.

At said date Edward Martin was the owner in fee of the said strip of ground, fronting sixty feet on Wash-

ington avenue and running northwardly to Christy avenue a depth of two hundred and twenty-five feet; which ground, together with other ground adjoining it on the east and west, all vacant and unimproved, had been previously allotted to plaintiff by a final decree of the circuit court of the city of St. Louis, in partition proceedings between plaintiff and Charles Green and others. From this decree an appeal was pending, taken by said Green, in the Supreme Court of Missouri, which appeal was dismissed by him on the twentieth day of June, 1892. A bond having been given on said appeal in words and figures as follows, to wit:

"Know All Men by These Presents, That we, Charles Green, as principal, and August Gehner and John M. Sellers, as sureties, are held and firmly bound unto Edward Martin in the sum of fifteen thousand dollars for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents.

"Sealed with our seals and dated at St. Louis, this 6th day of December, A. D., 1889.

"The condition of the above obligation is such that whereas Charles Green has appealed from the judgment in partition rendered against him and in favor of Edward Martin in the circuit court, city of St. Louis, and for one half the costs taxable in said cause, being the sum of four thousand, five hundred dollars, together with costs.

"Now, if said appellant shall prosecute his appeal with due diligence, to a decision in the Supreme Court of the State of Missouri, and shall perform such judgment as shall be given by the said Supreme Court, or such as the said Supreme Court may direct the circuit court, city of St. Louis, to give, and if the judgment of said circuit court or any part thereof be affirmed,

and said appellant shall comply with and perform the same, so far as it may be affirmed, and pay all damages and costs which may be awarded against him by the said Supreme Court, then this obligation to be void, otherwise to remain in full force and effect.

"CHARLES GREEN,       [SEAL]
"AUGUST GEHNER,       [SEAL]
"JOHN M. SELLERS,      [SEAL]

"Approved in open court this 6th day of December, 1889.

"Attest:          PHILIP H. ZEPP, Clerk."

Proceedings were begun by the city of St. Louis in the said circuit court on May 12, 1890, against Mr. Martin and said Green and others pursuant to said ordinance, being cause number 82220 of said court, for the condemnation of said strip of ground, for the public use as a public highway. Commissioners were duly appointed by said court to assess the damages sustained by the owners of said strip by the said condemnation thereof, and on April 4, 1891, they filed their report, as commissioners in said cause in said court, and assessed said damages at the sum of $120,000, and thereupon the city of St. Louis was granted time until May 30, 1891, to report the action of the said commissioners to the municipal assembly for its approval or rejection as required by law. *On May 5, 1891, the said commissioners' report was by resolution of the said assembly approved, and its certificate of approval was filed in said cause on May 29, 1891, and thereupon a final judgment was entered by said court vesting in the city of St. Louis the title to said strip for use as such public highway, on condition, however, that said city should first pay over to the owners of said strip the amount of damages awarded by said commissioners, to wit, the sum of $120,000, which said final judgment is in words and figures as follows, to wit:*

"April Term, 1891,—Friday, May 29th, 1891.

"The City of St. Louis,

v.

"Edward Martin, Charles Green, Thomas A. Simpson, Trustee for James P. Maguire, and Charles J. Maguire, Trustee for Joseph L. Mullery.    } 82220.

"Now at this day it appearing to the court that more than ten days have elapsed since the filing of this report of the commissioners in this cause, and that no exceptions thereto have been made, filed, or taken, and that said report has been duly reported to the municipal assembly of the city of St. Louis, for its information and approval, and that the same has been duly approved by the said assembly, and that said street is for public use; it is therefore ordered and adjudged by the court, that said report be, and the same is in all things hereby approved, confirmed, and held as firm and effective forever. And it is further ordered, adjudged, and decreed by the court, that the property described in said report, which is contained within the lines as established by ordinance number 15439 of said city of St. Louis be, upon the payment of the damages awarded by said report, vested in the city of St. Louis forever for the purposes named in the petition in this cause; that the plaintiff pay costs of this proceeding and that execution may issue therefor. And it is further ordered that the clerk of this court certify to the comptroller of the city of St. Louis a copy of the said report, together with the final action of the court thereon."

Thereafter a certified copy of said report was made and delivered by the clerk of the said circuit court to the comptroller of said city, and forthwith recorded by him and a copy thereof furnished by him to the munic-

ipal assembly of said city on September 20, 1891, and thereafter said assembly, by its ordinance approved October 23, 1891, appropriated the sum of $120,000 *in favor of the owners of said strip*, to pay said damages, and directed its auditor to draw his warrant in their favor.

Edward Martin, the plaintiff in this action, thereupon demanded payment of the money due him by reason of the said judgment of condemnation, but the city declined to pay same and avowed its intention to pay the money into court, because the ownership of said property was dependent on the aforesaid final decree in partition from which an appeal as aforesaid was pending. Mr. Martin at the same time notified the defendant through its comptroller and city counselor, that he was entitled to interest at six per cent per annum on the award from the date of the judgment of condemnation. The city, however, refused to cause the said money, or any part thereof, to be tendered or paid to the parties entitled thereto, or into court for their use as provided by its charter and ordinances, but retained the same in its possession until July 11, 1892, about one month subsequent to the dismissal by said Green of the said appeal in the Supreme Court. Mr. Martin immediately upon the dismissal of the said appeal, to wit, on the twenty-fifth day of June, 1892, again demanded from the city, through its proper officers, the payment of the said award and interest thereon, and was put off until the said officers could satisfy themselves of the dismissal of said appeal. On or about July 8, Mr. Martin again presented himself to the said officers and requested payment of said award and interest. The comptroller, acting under the advice of the city counselor, to whom the demand was referred, declined to pay any interest and thereupon Mr. Martin proposed that, instead of suing the city for

the whole amount, he would take the principal sum of $120,000, without prejudice to his claim for interest thereon, and leave the question of his right to interest thereon, and the amount thereof, to be established by legal proceedings. This being then and there agreed upon, plaintiff received the said sum of $120,000 on July 11, 1892, on account of the amount due him.

The Benton-Bellefontaine Railroad Company, on or about February 10, 1892, being thereto authorized by the city, laid its railway tracks over and upon the said strip, and said strip has been in use by the said road and by the public as a public street thenceforward.

Thereupon Mr. Martin brought this action for the interest on said $120,000, at the rate of six per cent per annum from May 29, 1891, until paid.

The city filed its demurrer in these words: "Now comes the said defendant and demurs to plaintiff's petition and assigns the following grounds herefor to wit: '*First.* Because said petition does not state facts sufficient to constitute a cause of action.'"

The demurrer was overruled and defendant declining to plead further, final judgment was rendered for $5,743.08 on May 29, 1894. Assignment of errors: "*First*, the circuit court erred in overruling defendant's demurrer; *second*, the judgment of the circuit court is excessive."

The one question for determination in this record is the date when interest begins to run upon the compensation awarded a landowner under a condemnation proceeding prosecuted under the charter of the city of St. Louis, for there can be no doubt in this case that the plaintiff is not estopped by receiving the principal sum of the award on account, under his agreement with the city that the acceptance of that sum should not prejudice his right to the interest he claimed which alone was in controversy. The demurrer admits that

this was the stipulation. The facts admitted take the case entirely out of the reasoning of *Cutter· v. New York*, 92 N. Y. 166, in which the party *receipted in full* for the award, and *there was no agreement* as in this case *that the acceptance* of the principal amount of the award *should not prejudice* the plaintiff's claim for interest. *Devlin v. Mayor, etc.*, 131 N. Y. 123.

The provisions of the charter of the city of St. Louis granting the power to condemn real estate for streets are to be found on pages 2119, 2120, 2121, 2122, Revised Statutes 1889, and the general features of such proceedings have often been considered by this court, but the exact question now presented does not appear to have been determined by the court in any of the cases. It was incidentally mooted.in *Hilton v. The City of St. Louis*, 99 Mo. 199, and suggested that unless the city had taken possession of the premises interest· ought not to run; but a careful reading of that case shows that the remark referred to was not essential to the decision of that case and neither side for that reason regard it as conclusive authority in this case. *Plum v. Kansas City*, 101 Mo. 525. It is therefore a case which we are at liberty to consider and decide by a reasonable and just construction of the charter of St. Louis, unhampered by the adjudications upon other charters, with different provisions, and under different systems of procedure.

The fundamental law provides: "That private property shall not· be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, *or into court for the owner*, the property shall not be disturbed or the proprietary rights of the owner therein divested." Const. Mo., art. 2, sec. 21.

The charter of St. Louis, article 6, provides the manner in which such proceedings shall be initiated and conducted. Among other things in section 9, article 6, of the charter, the commissioners appointed to ascertain the value of the land to be appropriated by the city for a public street, are required to file their report in the circuit court and the court is required to give the city counselor time and an opportunity of reporting the result of their assessment to the municipal assembly for its information and approval. To the city is accorded the privilege of approving the report or dismissing its proceeding at its cost. If the assembly approve the report, final judgment of condemnation follows, unless the landowner files his exceptions as allowed by the charter. When the final order is entered the clerk of the circuit court is required to make a certified copy thereof and deliver the same to the comptroller of the city, who in turn must furnish a copy thereof to the assembly which is required at its first session to make an appropriation to pay the judgment and it is made the duty of the city treasurer to pay the money to the parties entitled thereto *or into court for their use.* If the ownership of the property be in controversy the amount assessed shall be paid into court for the benefit of the successful claimant.

In this case, it will be remembered, the ownership of the property was in controversy but all the claimants were in court. The city approved the compensation awarded by the commissioners, and the assembly made the appropriation; but the comptroller and city counselor refused either to pay the award to Mr. Martin, who had been adjudged to be the owner, or into court as the charter required. It is clear that the pendency of the partition suit was no obstacle in the way of *the payment of the award into court.* The Constitution

of the State and the charter of the city alike permitted this course, if the city desired to avoid all complications in regard to the title.

Few questions have elicted such diversity of opinion as the time at which property condemned in the exercise of eminent domain should be valued. In some jurisdictions the evidence is confined to the date of filing the petition. In other cases where the condemning corporation has entered upon land and received the use thereof prior to the commencement of the proceedings to assess the value, the court has allowed interest on the damages assessed from the time of the entry upon the land. *Webster v. Railroad*, 116 Mo. 114. In other cases, where like entries were made prior to the institution of condemnation proceedings, this court has ruled that the damages should be based on the value of the land at the time of the assessment. *Railroad v. Town Site Co.*, 103 Mo. 451; *Doyle v. Railroad*, 113 Mo. 280. But we are relieved of all consideration of the elements which enter into the assessment of damages prior to their merger into a judgment. The sole question is as to interest on the judgment or award. Here again we are confronted with the same contrariety of opinion; some courts holding that the judgment bears interest from the date of its entry (*Plum v. City of Kansas*, 101 Mo. 525; *Miss. Bridge Co. v. Ring*, 58 Mo. 491; see note 9 to sec. 499, Lewis on Eminent Domain), others that interest should only be computed from the date of possession by the party condemning; others from the time the landowner can enforce payment, and still others from the time of demand. This difference results from the statutes in various States and any and all of them may mislead us unless care is observed in comparing the laws which they construe with our fundamental and statute law on the subject.

The learned city counselor with his usual industry has collated all the cases which hold that interest runs from the taking of the possession and argues as an original proposition that we should so construe the charter, and he combats the position that a judgment in condemnation should be placed in the same category with other judgments and thus draw interest from their rendition. On the other hand the counsel for Mr. Martin insists that as this is the exercise of extraordinary power by which a citizen is deprived of his property by the State for the public use the statute allowing such appropriation should be construed most liberally in favor of the citizen.

Our statute on interest provides: "Interest shall be allowed on all money due upon any judgment or order of any court, from the day of rendering the same until satisfaction be made by payment, accord, or sale of property; all such judgments and orders for money upon contracts bearing more than six per cent interest shall bear the same interest borne by such contracts, and all other judgments and orders for money shall bear six per cent per annum until satisfaction is made as aforesaid." R. S. 1889, sec. 5974.

Does a final order vesting the title of the owner in the city upon the payment of the sum of money awarded to the owner by the commissioners and approved by the court and municipal assembly, constitute a judgment or order for money due? We hold that it does. The judgment has a dual aspect. It finds this sum is the just compensation, due at the date of its rendition, to the landowner, which he shall receive before he shall be deprived of his property, and at the same time it decrees that immediately upon the rendition of such judgment the city may pay the money and take the land. It completely meets the suggestion of the Supreme Judicial Court of Massachusetts that the

true rule of compensation is that the price is due and ought to be paid at the moment the purchase is made, that is to say "to pay the compensation with one hand, whilst they apply the ax with the other; and this rule is departed from only because some time is necessary, by the forms of law, to conduct the inquiry; and this delay must be compensated by interest." *Parks v. Boston*, 15 Pick. 198.

Final orders in condemnation proceedings have been placed upon the footing of judgments for all practical purposes. Certainly, as elsewhere remarked, it is the result of the exercise of judicial power. All the attributes of judgments are ascribed to such orders in the application of statutes of limitation, the right of appeal, and when attacked collaterally. Why should the right to bear interest alone be denied? We can find no sufficient reason why they should not. The proceeding is one by the city, in which all the advantage is given to the municipality to the disadvantage of the landowner. The city, by the inauguration of this method of acquiring the property for the time being, completely deprives the owner of beneficial use. His possession is purely permissive after the final order, subject to the paramount right of the city to pay the award and take control at any moment. He can not with safety contract to sell it or accept a better price than the commissioners have awarded him. He can not lease it for a definite term. Whereas, the city is given not only the right she had of approving the assessment before the final order or judgment is entered, but after judgment is entered the municipal assembly may delay, throughout the whole of its first session after the entry of said judgment, the making of the appropriation with no compensation whatever for such delay to the owner if the contention of the city counselor is correct that not even interest is allowed on

the judgment. Such a conclusion is unreasonable, inequitable, and unnecessary under the terms of the charter. The city having initiated the proceeding, and having it within its power to make the appropriation at once should be held to a speedy adjustment and if it fails it must pay the interest on the judgment which our statute gives as a part of the compensation to the landowner for his land pending the delay of the city. By the adoption of this rule we also insure uniformity in cases like this.

What might be the city's right if the property owner shall appeal is an entirely different question. Here the city could have avoided all interest by paying the money into court as permitted by the Constitution and charter. It must be constantly borne in mind that neither the award of the commissioners nor the approval of the court are final. No final order is entered until the city has elected to pay the amount awarded and certified its assent to the court. Then for the first time we hold that the final judgment is rendered and bears interest like any other money judgment or order. The contention that the city having thus tied up the citizen's land may still further procrastinate and avoid interest on the award by simply neglecting to take a possession which it sought is repugnant to justice, reason and a fair construction of the charter. To so hold would be to require the property owner to pay the city rent to the amount of the interest for premises of which he had no beneficial use. To enter in every case of this kind into the inquiry as to the value of the base or qualified estate which the landowner holds at the sufferance of the city will result in engrafting a second damage suit on every condemnation case. We think the law requires the city should proceed expeditiously to finish the proceeding of condemnation when it begins and to allow the landowner

as a part of his compensation the lawful interest for the time subsequent to the ascertainment of the value of his land taken.

We think the circuit court of the city of St. Louis correctly construed the charter and its judgment in favor of Edward Martin is affirmed.    SHERWOOD and ·BURGESS, JJ., concur.