PEMISCOT COUNTY et al., Plaintiffs, v. STERLING H. McCARTY, Judge, Defendant.

In Banc, January 13, 1919.

1. **DRAINAGE DISTRICT:** Order of County Court to Enlarge Ditch: Appeal. Under the County Court Drainage District Act no appeal lies from an order and judgment of the county court ordering (in pursuance to Section 5613, Revised Statutes 1909, and Section 5614, Laws 1913, p. 279) that certain ditches be enlarged and cleaned

out and the obstructions removed. The circuit court cannot by appeal obtain jurisdiction to correct any errors in the proceeding leading up to said order or in the order itself.

2. **PROHIBITION**: Merits of Case. In an original suit of prohibition to prohibit the circuit judge from taking jurisdiction of a cause appealed from the county court, on the ground that an appeal did not lie, the merits of the case before the county court will not be considered.

3. ————: No Appeal: Availability of Other Writs: Certiorari. And if appeal is the only method by which it is asserted that the circuit court obtained jurisdiction of a cause appealed from the county court, the question of whether the circuit court, by *certiorari* or by some other writ, in pursuance to its superintending control over county courts, could have obtained jurisdiction, will not be decided.

## Prohibition.

WRIT ISSUED.

*Charles E. Bragg* and *Gallivan & Finch* for plaintiffs.

(1) If there was any basis, in the record made in the county court, for the exercise of any "superintending control" on the part of the circuit court, such superintending control could have been exercised by the writs of *mandamus* or *certiorari.* St. Louis Co. Court v. Sparks, 10 Mo. 123; Bennett v. McCaffery, 28 Mo. App. 221. And, as no appeal could lie under the statutes and the decisions of this court, such superintending control could be exercised only by one or the other of such writs. Sheridan v. Fleming, 93 Mo. 325; State ex rel. v. St. Louis Co. Court, 47 Mo. App. 647; Barnett v. Pemiscot County Court, 111 Mo. App. 700. (2) The county court had full authority under the statutes to arrange contracts between different drainage districts for such an outlet as one might need and the other could furnish "on such terms as the county court may decide to be just and fair." R. S. 1909, secs. 5613, 5614 and 5628. (3) The appellate jurisdiction, in any case, is purely of statutory origin. *Expressio unius exclusio alterius est.* The drainage statute itself states the

cases wherein appeals will lie from the county court to the circuit court. All other cases are excluded; and, therefore, no appeal lies in such other cases. (4) In the absence of constitutional inhibition, it is within the power of the Legislature to prescribe the cases in which and the courts to which parties shall be entitled to bring a case for review, and to impose such conditions and restrictions as it may see fit. 3 Corpus Juris, 297; John v. Paullin, 231 U. S. 583, 58 L. Ed. 381; Schuepbach v. Laclede Gas Light Co., 232 Mo. 611; Reetz v. Michigan, 188 U. S. 508, 47 L. Ed. 566; State v. Thayer, 158 Mo. 62; State v. Mericle, 245 Mo. 549; State v. Virron, 164 Mo. App. 212; State v. Short, 250 Mo. 333; State v. Brown, 153 Mo. 578; State ex rel. v. Woodson, 128 Mo. 514; Drainage District v. Railroad, 216 Mo. 715; Buschling v. Ackley, 270 Mo. 173; State v. Pieski, 248 Mo. 715. (5) The proceeding by appeal was entirely unknown to the common law. It is of civil law origin, and was introduced therefrom into courts of equity and admiralty. 3 Corpus Juris. 316; Wingfield v. Neall, 10 L. R. A. (N. S.) 449; State v. Thayer, 158 Mo. 62. (6) The remedy by appeal in actions of law is purely of statutory origin and exists only when given by some statutory provisions. 3 Corpus Juris, 316; Bussiere v. Sayman, 257 Mo. 308; Barnes v. Missouri Valley Constr. Co., 257 Mo. 175; Star Bottling Co. v. Exposition Co., 240 Mo. 641; Western T. & T. Co. v. Dr. Dist., 226 Mo. 420; Owens v. Matthews, 226 Mo. 78; State v. Broaddus, 216 Mo. 342; Millar v. Transit Co., 216 Mo. 103; Thomas v. Elliott, 215 Mo. 598; State v. Woodson, 128 Mo. 407; Sheridan v. Fleming, 95 Mo. 321; State ex rel. v. McElhinney, 241 Mo. 608; Ackerman v. Green, 201 Mo. 243. (7) Drainage laws are purely statutory proceedings both as to tribunal and the character of the proceedings; were unknown to the common law, and are special and constitutional; and the provisions of the code of civil procedure are not applicable thereto. Buschling v. Ackley, 270 Mo. 173; State ex rel. Hancock v. Spencer, 166 Mo. 285; State ex rel. Wells v.

Hough, 193 Mo. 615; Leavenworth Ter. Ry. v. Atchison, 137 Mo. 218; Rothan v. Railway, 116 Mo. 143; Nishnabotna Dr. Dist. v. Campbell, 154 Mo. 151; Anderson v. Pemberton, 89 Mo. 64; Railroad v. Townsite Co., 103 Mo. 457.

*Ward & Reeves* and *N. C. Hawkins* for defendant.

(1) The right of appeal from the county court to the circuit court existed in this matter, and it was the proper and only method by which the action of the county court could be supervised, superintended or reviewed. (a) No other method, save an appeal would do more than bring up the record proper, which record proper had been "fixed" so as to make it invulnerable, as it was thought, to attack. (b) The inhibitions on the right of appeal, set out in Section 5592, R. S. 1909, relied upon by plaintiffs, apply to and only to a proceeding to organize a drainage district, and not to a proceeding to enlarge, clean out, remove obstructions therefrom or do new work, as contemplated by Section 5613, R. S. 1909, and Sec. 5614, Laws 1913, p. 279, the latter being in the very nature of things intended to become operative only after a long lapse of time and under changed conditions. (c) Even if the inhibitions in Section 5592 did apply to such a proceeding as this, they do not apply to this particular proceeding, which was begun under the Act of 1913. State ex rel. v. Taylor, 224 Mo. 490; State ex rel. v. Bugg, 224 Mo. 537. (d) The judgment of the court extended the life of the district beyond the period for which it was originally incorporated, undertook to give a money judgment in favor of one district and against another, destroyed the plan of reclamation originally adopted by it, created a lien upon the lands of the district, without regard to whether or not any one tract would be benefited or damaged; it plunged each district into entangling alliances with all the others, virtually consolidating the five systems into one district, and gave to Elk Chute Drainage District (a district over which the county court did not have and never can have

control) the power to control the other four districts and forever deprived the other four districts of the right of self determination. It expended money for lands in Elk Chute Drainage District, at values fixed by that district and wherein no one interested in any of the four other districts had any authority to be heard. It expended money entirely outside of the respective districts, and entirely outside of Pemiscot County. It was not such a judgment as might be rendered by the county court upon the undisputed facts, or under the statement as filed, or authorized by law. (2) The total amount of tax levied upon this district for the first and now proposed improvement, exceeds the grand total of benefits originally determined. It is fundamental and no authorities are needed to sustain the assertion, that such a proceeding is a clear denial of the rights of those who are not benefited, among them being these objectors. Unless an appeal is prohibited, it is granted. King's Lake v. Jamison, 176 Mo. 564; State ex rel. v. Taylor, 224 Mo. 490.

WILLIAMS, J.—This proceeding, originally instituted in this court (by Pemiscot County, the three judges of the County Court of said county, Drainage District No. 6 of Pemiscot County, and approximately two hundred and fifty landowners of said drainage district), seeks to prohibit the Hon. Sterling H. McCarty, Judge of the Circuit Court of Pemiscot County, from taking further judicial action in a certain drainage proceeding.

The drainage proceeding originated before the County Court of Pemiscot County under the provisions of Section 5613, Revised Statutes 1909, and Section 5614, Laws 1913, page 279, and was, after proceeding to judgment in the county court, attempted to be taken on appeal to the said circuit court for trial *de novo*.

The contention of the plaintiffs is, that there was no right of appeal from the order or judgment of the county court and hence the circuit court acquired no jurisdiction to proceed with the matter.

Defendant filed his return in this court and there-after plaintiffs moved for judgment on the pleadings.

The following may be stated as the conceded facts:

Drainage District No. 6 of Pemiscot County, com-prising about 83,500 acres, was duly organized March 11, 1907, by an order of the County Court of Pemiscot County, under what is sometimes called the ''County Court Drainage Act,'' which will now be found (ex-cept as to subsequent amendments) in Article 4, Chap-ter 41, Revised Statutes 1909.

The defendant herein is the judge of the judicial circuit which embraces Pemiscot County.

On April 6, 1918, proceeding under and by virtue of Section 5613, Revised Statutes 1909, and Section 5614, Laws 1913, page 279, a written petition or state-ment (signed by the two-hundred and fifty landowning plaintiffs herein, which purported to be more than twenty per cent of the number of persons owning land in said drainage district and a majority of the acreage of said district), was filed with the county clerk of said county. Said petition alleged in sub-stance that certain ditches in said drainage district were in need of being enlarged, cleaned out, and of having obstructions removed and new work done, to afford adequate outlets for the drainage of said district.

The county court thereupon set the same for hearing to the first day of its May term, 1918, and caused notice thereof to be published as required by law.

Upon the appointed day the county court ap-pointed a competent surveyor to examine the ditches of the district and report his observations back to said court.

On May 14, 1918, the surveyor filed his report showing the work which he deemed necessary to be done to fully and fairly reclaim the land, together with an estimate of the cost thereof, whereupon certain per-

sons owning land in said district filed their "objections, exceptions and remonstrances."

The cause was then continued until June 3, 1918, for the purpose of permitting all interested persons, who might so desire, to file objections and exceptions.

On June 3, 1918 one-hundred and ten other land-owners of said district filed objections and exceptions.

On June 4, 1918, the county court was of the opinion that before ordering the work done in said district it would be advisable to have further information on the matter of an outlet for drainage in said district in connection with the plan of reclamation adopted by the Elk Chute Drainage District, and to that end directed the surveyor theretofore appointed to make investigation, surveys and costs thereon and report the same on June 17, 1918, to which date the proceeding was continued.

On June 17, 1918, the county court again proceeded to hear the matter and, after hearing the evidence and arguments presented, made an order finding that the statement was filed with the clerk of the county court more than four weeks before the first day of the May term, 1918, of the county court; that the same was signed by the requisite number of land and acreage owners; that proper notice had been duly published; that the ditches and other improvements in said district were in need of enlargement, cleaning out, having obstructions removed and new work done, to provide adequate outlets for drainage in said district; the county court approved the surveyor's or engineer's report and ordered the work to be done, and overruled the objections filed; the court also found that it would not be necessary for the district to acquire "any other new or additional rights of way; that same already acquired by the district being found sufficient."

Further matters found and orders made by the county court on said day are stated in defendant's return as follows:

"The court then found that Drainage District No. 6, organized March 16, 1907, had constructed a main

ditch and twelve laterals thereto, and the county court found that said ditch did not receive adequate drainage; that there should be an outlet made by said Drainage District No. 6; and the court further found that there should be an outlet made by said Drainage District No. 6, and Elk Chute Drainage District, which was organized in the circuit court of Dunklin County, Missouri, they, together with Drainage Districts Nos. 8 and 9, should together have an outlet and that each district should contribute its fair share of the diversion cost of outlet for said district; and the court further found:

"1. That the main ditch in Drainage District No. 6 should be enlarged and deepened throughout its entire length, except portions of said ditch through Sections 21, 20, 19, 30 and 31, in Township 18 north, of Range 12 east, should be deepened but not widened, and there should be constructed piling on both sides of said ditch through the town of Steele, and that the main ditch should be deepened from two feet to six feet below the bottom on an average of about four feet throughout its entire length.

"2. That lateral known as Ditch No. 1 should be widened through its entire length and deepened so as to have a depth from six to seven feet through its entire length, and that each of the other laterals known as Ditches No. 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12 should be deepened and the major part of them widened.

"3. That Drainage District Number 6 should pay its proportionate part with the other districts heretofore mentioned in providing adequate, proper and efficient outlets for all of said districts.

"4. Thereupon the court orders all of said work done and the outlet made according to the plans and report of the engineer, L. E. Thrupp, and then said order provides:

" 'The court finds from the evidence adduced and the report of L. E. Thrupp, engineer, made and submitted as aforesaid, that to do the work herein ordered

to be done, together with the amount that District No. 6 should, in fairness and justice, pay and contribute to providing proper and efficient outlets of drainage needed by said district and therein provided for, is the sum of $784,515.94.'

"It is therefore ordered by the court that the said sum of $784,515.94 be and the same is hereby levied and assessed against the lands in said Drainage District No. 6, originally assessed for the construction of the ditches and other improvements therein, and that said sum be and is hereby divided *pro rata* according to the original assessments of benefits against the lands in said district."

On June 17, 1918, the objectors filed an affidavit for an appeal, and the county court thereupon made an order granting an appeal to the said circuit court.

Thereafter and more than ten days before the July term, 1918, of said circuit court, a duly certified copy of the proceedings in the county court was filed in the circuit court.

On the first day of the July term, 1918, of said circuit court, said drainage district and the two hundred and fifty landowners who had originally instituted the proceeding in the county court, filed in the circuit court a motion to dismiss said appeal, on the ground that an appeal could not be taken from the above mentioned judgment of the county court, and that therefore the circuit court acquired no jurisdiction by the attempted appeal.

The defendant sitting as judge of said circuit overruled the motion to dismiss the appeal, and was proceeding to hear the matter when the preliminary rule in prohibition was issued by this court.

No question of misjoinder of parties plaintiffs is raised and we therefore do not discuss that question.

Misjoinder.

Many matters are stated in the return concerning the merits of the proceeding tried before the county court, but as we view the matter they are of no concern in the present proceeding.

Merits.

The present record discloses that the proceeding was attempted to be brought to the circuit court from the county court by the process of an appeal. No other **Appeal.** method or process was asserted or attempted to be asserted by which the circuit court could acquire jurisdiction in the cause. We are therefore not here concerned with the question of whether or not the circuit court, under its power of superintending control over the county court, could by writ of *certiorari* or by other writ have acquired jurisdiction.

The foregoing being true there is but one question presented by this record, which question is: Did an appeal lie to the circuit court from the order or judgment of the county court?

If an appeal did lie, then the circuit court acquired jurisdiction and our preliminary rule should be quashed. If an appeal did not lie, then the circuit court acquired no jurisdiction and our preliminary rule should be made absolute.

Upon an examination of the matter we have reached the conclusion that an appeal did not lie from the judgment of the county court.

Section 5592, Revised Statutes 1909, of the County Court Drainage Act, does provide for an appeal from certain orders or judgments of the county court in drainage cases, but, neither the act nor the amendments thereto in any manner undertake to provide an appeal from an order or judgment of the kind entered by the county court in the instant case.

In the recent case of Buschling et al. v. Ackley et al., 270 Mo. 157, it was held by Court in Banc that an appeal from a judgment of the circuit court under the "Circuit Court Drainage Act" did not lie unless the act itself provided for such an appeal. It was there said:

"The drainage act being purely a statutory proceeding, both as to the tribunal and the character of the proceedings, was unknown to the common law, and the act is special and constitutional and the provisions of the code of civil procedure are not applicable there-

to. In its present amended form it is a code unto itself. It is in all respects as to its provisions like the election law, forcible-entry-and-detainer law, road law and eminent-domain statutes, and should be strictly followed and so construed, independent of the civil code. This is especially true of appeal. [State ex rel. Hancock v. Spencer, 166 Mo. 1. c. 285; State ex rel. Wells v. Hough, 193 Mo. 615; Leavenworth Terminal Ry. & B. Co. v. Atchison, 137 Mo. 218; Rothan v. Railway, 113 Mo. 1. c. 143; Anderson v. Pemberton, 89 Mo. 64; Railroad v. Randolph Townsite Co., 103 Mo. 1. c. 457; State ex rel. Keshlear v. Slover, 134 Mo. 1. c. 15.]

"The Drainage Act is a separate and distinct statute. Since the various amendments thereto it is a complete code unto itself. Not being placed in the statute under the civil code of procedure, it is independent of it and is not governed by it. Consequently the procedure thereunder is not as in an ordinary civil case within the meaning of the code of civil procedure and is not governed by it." Id. 1. c. 173-4.

There appears to be no reason why the rule announced in the Ackley case, supra, with reference to the right of appeal under the Circuit Court Drainage Act, should not apply with equal force and effect to the right of appeal under the County Court Drainage Act. The rule is fully discussed and the authorities are cited in that case which now renders unnecessary further treatment of the subject.

A further interesting and comprehensive discussion of the right of appeal under the "County Court Drainage Act" will be found in Drainage District v. Railroad, 216 Mo. 709.

For the reasons given in the two above mentioned cases we hold that an appeal did not lie from the order or judgment of the county court and that therefore the circuit court acquired no jurisdiction over the proceeding by the attempted appeal.

From the foregoing it follows that the preliminary rule heretofore issued in this cause should be made absolute.

It is so ordered.

*Bond, C. J., Walker, Blair, Woodson* and *Graves, JJ.,* concur; *Faris, J.,* not sitting.