IN

# THE SUPREME COURT

OF

## THE STATE OF MISSOURI,

FEBRUARY TERM, 1869, AT ST. JOSEPH.

---

CITY OF ST. JOSEPH, Respondent, *v.* MARY HAMILTON *et al.*, Appellants.

1. *Practice, Civil — Damages for opening streets — Appeal.*—Under the charter (article VI, §§ 2, 3, 4) and ordinances (ordinance approved August 7, 1866) of the city of St. Joseph, the property of appellants, bordering Fourth street in that city, was condemned and damages assessed by a jury in their favor, amounting to three thousand dollars. The verdict was reported by the mayor to the city council and by them rejected. From this verdict no appeal was taken by either party. Afterward, by order of the city council, the property was again condemned and damages awarded of $1,500. From this verdict appellants appealed to the Circuit Court, and, on motion, judgment was rendered in their favor for the amount of the first award. *Held,* that the second proceeding was in the nature of a new suit, commenced on new process, and not a continuation of the former, and that the Circuit Court could take no jurisdiction of the first award.
2. *Practice, Civil — Damages for widening streets — Verdict may be quashed, when.*—If the second assessment was a nullity, that was good ground for quashing it. The charter of the city of St. Joseph contained no warrant authorizing the city to reject the first award and by new proceedings to obtain another. Such proceeding in effect allows the party to set aside a judgment according to its own caprices, until it finally obtains one to suit its purposes. Such a power, if desirable, should be given in plain terms, and not rest for its basis on forced and artificial interpretations. If the city elected to abandon the enterprise, and not to take the property, there was no divestiture of title from the owner, and he was not entitled to pay from the public.

City of St. Joseph v. Hamilton et al.

*Appeal from Fifth District Court.*

The facts appear in the opinion of the court.

*Hall & Oliver*, for appellants.

I. The city had no authority, under its charter, to summon a second jury to assess damages to the defendants. If the city felt aggrieved by the verdict of the first jury, its remedy was by appeal. (§§ 2, 3, 6, art. VI, p. 69, of charter of St. Joseph, approved February 22, 1851; State v. Keokuk, 9 Iowa, 438; 36 Mo. 551.) And although the law did not authorize the summoning of the second jury, yet the party aggrieved might appeal from the verdict of said second jury. (10 Mo. 773.)

II. Even if it be admitted that the city may refuse to open a street and abandon it to the owners of the land over which it is located after damages have been assessed by a jury, yet that will not avail the city in this case. She never has abandoned the street in controversy; she insists on opening it. At the very time the council disapproved of the verdict of the first jury, they declared their intention to open the street, and directed the mayor accordingly. We insist that the most that can be claimed by the city is, that after the verdict of the first jury she might have abandoned the street. But having elected not to abandon the street, we say she becomes liable to pay the damages the first jury assessed. (9 How. 94; Peirce Am. Railw. 218; 10 Cow. 157; 12 Cow. 364.)

III. The verdict of the second jury being unauthorized by law, the verdict of the first jury remained in full force, especially since the city council, with full knowledge of the verdict, determined that the street should be opened. And when the case went to the Circuit Court neither party was entitled to a trial *de novo*, for neither party had appealed from the verdict of the first jury. The Circuit Court, then, having no right to try the case anew, and the first verdict being in full force, the only thing left for the court was to give judgment for the amount of the first verdict. (City Charter, art. VI, §§ 2, 3, 4, p. 69; 1 Mo. 539; 8 Mo. 47; 12 Mo. 330; 3 Mo. 12; 9 Iowa, 438; 10 Pick. 235; 18 U. S.

Dig. 128, § 33 ; Staats v. Hudson River R.R. Co., 39 Barb. 298 ; 5 Mass. 420 ; 13 Mass. 437 ; 22 Pick. 264 ; 2 Greenl. 179 ; 2 Met. 559 ; 7 Johns. 545 ; 25 Cow. 180 ; 3 Cush. 91.)

IV. The appeal took the whole case to the Circuit Court, beginning with the ordinance of the 7th of August, 1866. That was the only authority for the mayor to act. All action subsequent to said ordinance was under it; and to carry it into effect, and in order that the Circuit Court could understand the case, it was necessary that the whole record should be before it. It will hardly be contended that the appeal from the verdict of the second jury did not properly take up to the Circuit Court the ordinance of August, 1866. Now, if the appeal took to the Circuit Court the first proceeding on paper in the case, why did it not take all intermediate proceedings ? (1 Mo. 539 ; Gen. Stat. 1865, p. 724, § 12 ; 10 Mo. 773.)

*Vories & Vories,* for respondent.

I. The District Court committed no error in reversing the judgment of the Circuit Court in this cause. That court had no jurisdiction over the verdict of the jury upon which it rendered judgment against the plaintiff for three thousand dollars. No appeal was taken from said verdict; the court was therefore not possessed of the same. Nothing was before the court but the verdict for fifteen hundred dollars, rendered on the 16th of October, and from which the appeal was taken by the defendants. If the first verdict had been appealed from, and had been properly before the court, no judgment could have been rendered thereon, nor could the court render a judgment in any such case even where the damages were more properly found. All that the court was authorized to do was to have the damages assessed by a jury. See City Charter, approved February 22, 1851, article VI.; Book of Ordinances, 52–3 ; also ordinance of the city entitled "An ordinance regulating when property is taken for public use." (Ord. p. 137.)

II. There is no mode provided by law for the collection of the amount of damages assessed in such case, except that it is provided that the property shall not be taken until the damages are

paid; hence, the proceeding to ascertain the amount of damages is only had for the purpose of fixing the price for which the city can take the property. When this is done there is nothing in the law to bind the city to take the property or to pay the damages assessed. It is only provided that she shall not take the property until the money is paid. This is the security of the owner of the property. The right of action never arises in favor of the property-holder to recover the money assessed, until the property is actually taken; and by the law in this case the property cannot be taken until the money is paid. The judgment of the court was therefore erroneous, if the case was properly before it. It could only proceed to have the damages reassessed. (See charter above referred to; also North Missouri R.R. Co. v. Lackland, 25 Mo. 515, 530, 532; 10 How. 395; Cushman v. Smith, 34 Maine, 247, where the whole subject is investigated; Bloodgood v. M. & H. R.R. Co., 18 Wend. 26–32.) But it is not necessary to investigate these questions, as the court gave judgment on a case which had never been appealed from or otherwise brought before the court. If the case was before the Circuit Court, as is assumed by defendants, then it was plainly the duty of the court to proceed to have the damages reassessed, as the law directs. If the case had not been appealed, so that the damages should be reassessed, then the court had no jurisdiction of the case, and its action was erroneous. In either case the District Court properly reversed the judgment of the Circuit Court, and the judgment of the District Court should be by this court affirmed.

WAGNER, Judge, delivered the opinion of the court.

This was a proceeding commenced by and before the mayor of the city of St. Joseph, under the charter of said city, for the purpose of widening Fourth street, and to condemn a strip off from the east end of the lot of appellants. The proceedings were instituted under authority given by the charter, and in pursuance of ordinances passed by the city council. The second section of the sixth article of the charter provides that the mayor and councilmen shall have power to extend, open, or widen streets; and that, when private property is required or taken therefor, the

19—XLIII.

mayor shall in all cases cause a jury to be summoned and sworn to assess the damages. The third section declares that when any assessment of damages shall have been made for opening, extending, or widening any street, either the city or any other person or persons feeling themselves aggrieved thereby may take an appeal from such assessment to the Circuit Court, in such manner and on such terms as appeals are granted from justices of the peace. By section 4 it is provided that when any such appeal shall be taken to the Circuit Court, the same shall be tried as other issues in said court; and in case damages be assessed to any person by a jury or court, the same shall be paid out of the city treasury before the property of such person shall be taken for public use. By an ordinance approved August 7, 1866, regulating proceedings when private property is taken for public use, the following clause is enacted: " On the day mentioned the jury shall be sworn, and, after examining the ground, shall make an award in writing, which, if an appeal be not taken therefrom in accordance with the third section of the sixth article of the city charter, shall be reported to the city council, and, if approved by them, shall be binding on the city and all others interested, and an appropriation shall be made of the sum awarded."

On the 7th of August, 1866, the city council passed an ordinance requiring the street to be widened which passes appellants' lot, a portion of which was sought to be condemned. A jury was regularly impaneled on the 11th day of September, 1866. The parties appeared, after which the property was examined and the evidence heard by the jury, and damages were assessed at the sum of three thousand dollars. This verdict and assessment were, under the law, reported by the mayor to the city council, whereupon the council disapproved of and rejected the same, and refused to order a warrant to be issued for the amount of the verdict. From this verdict no appeal was taken by either party.

On the 10th day of October, 1866, the council ordered the mayor to again proceed and have the property condemned. In compliance with this order the appellants were notified of the proceeding, and another jury was impaneled and sworn on the 16th day of the same month, and assessed the damages at fifteen

hundred dollars. When the second jury were sworn, the appellants appeared and filed their motion to dismiss, on the ground that a previous jury had assessed the damages; that the mayor had no right to order a second jury; and that the first verdict could only be affected by an appeal taken and prosecuted in due form. It does not appear what disposition was made of the motion. But from the second assessment the appellants appealed to the Circuit Court, and in that court they moved that judgment might be rendered in their favor for three thousand dollars, the amount awarded by the first jury. This motion the court sustained, and gave judgment accordingly. The cause was then taken to the District Court, where a reversal was had, and it is now brought here for revision.

The first question that will be considered is the action of the Circuit Court in entering up judgment for the amount assessed by the first jury. How it was presented in such a shape that the court could take jurisdiction of it I cannot comprehend. It was a distinct proceeding of itself. The time had passed for taking an appeal; and upon the theory of the counsel it was a valid and subsisting judgment, unreversed and unappealed from. It had no connection with the second judgment, but was entirely independent of it. The second proceeding was in the nature of a new suit, commenced on new process, and was not a continuation of the former.

The case of Downing v. Garner, 1 Mo. 751, does not countenance the practice adopted by the Circuit Court. There the justice improperly set aside a judgment and granted a new trial. Upon appeal the unauthorized second judgment was reversed, and the party was left to take the benefit of the first judgment which he obtained before the justice of the peace, but the judgment was not entered up in the appellate court. In Staat v. The Hudson River R.R. Co., 39 Barb. 298, two independent causes of action were united in the same petition, and it was held that the judgment might be reversed as to one cause and affirmed as to the other. If the second assessment in this case was a nullity, that was good ground for quashing it, but it would not authorize the court to render a judgment on a matter not before it.

The next question to be considered is, what force is to be attached to the first assessment, and what rights the appellants acquired under it. The charter, which is the warrant of attorney for the action of the mayor and council, makes no express provision for the calling of a new jury where the assessment of the first jury is unsatisfactory. Such a power can only be inferred, and is at best of doubtful implication. The only power conferred on either party, if they are not satisfied with the verdict, is an appeal to the Circuit Court, where the case shall be tried as other issues in said court. Where damages are assessed in said court, the city is required to pay the same; but, for the security of the rights of the citizen, his property shall not be taken or appropriated till it is paid for. The charter clearly points out the mode of procedure; and there is no just or safe rule of construction by which the party who is the main actor, and who has the extraordinary privilege of instituting the proceedings and summoning the jury, should be allowed, of its own pleasure, not only to reject the finding, but to proceed as often as it pleases till it finally obtains a verdict that suits its views. This is, in effect, allowing the party to set aside a judgment, according to its own caprices, till it finally obtains one that suits its purposes. I can find no warrant for this extraordinary power in the charter. There is no mutuality in the proceeding; and if such a power is desirable it should be given in plain terms, and not rest for its basis on forced and artificial interpretation.

As before observed, the charter provides that the property shall not be taken till payment is made; and the ordinance enacts that if the council approves of the assessment it shall be binding on the city. In this case the assessment was rejected by the council, though no appeal was taken. Can it be said that the appellants have any vested right in the award or assessment of the first jury, or that there is any means by which they can coerce its payment?

The counsel for the appellants have cited many cases, and I have looked through them all; but I find, in nearly every one where payment was enforced, there was an acceptance on the part of the public. I have no doubt that the city may dismiss its proceedings at any time before final judgment in the Circuit Court; and then

the only liability that would be incurred would be the expenses. So, if on account of excessive damages it should be deemed unwise or impolitic to proceed, it might abandon the work; but there should be either an abandonment or an appeal prosecuted in pursuance of the manner prescribed by the charter.

If the city elects to abandon the enterprise and not to take the property, there is no divestiture of title from the owner, and he is not entitled to pay from the public. The case of Wilkinson v. Buchanan County is not in contravention of this doctrine, for that adjudication was made on a statute different from the provisions of this charter. It was based on the Revised Statutes of 1845, which declared that, upon the assessment of damages, the County Court should issue a warrant on the county treasury for the amount of damages and costs. The command was imperative, and there was no direction that the court should defer the warrant till the road was opened, or that the property should not be taken till payment was made. But, on the contrary, as soon as the report of damages was made, the public acquired a right of way, and the owner a vested right, whether the road was opened or not. But here payment is to precede the taking of the property, and until payment is made the parties remain *in statu quo.* There is considerable diversity in the authorities upon the subject, but it will be found that they are generally predicated on particular statutes; and I have endeavored to confine this discussion to the real meaning of the charter before the court.

For error of the Circuit Court in entering up judgment upon the award of the first jury, which was not legally before it, the judgment of the District Court will be affirmed. The other judges concur.