EBENEZER WHYTE, Respondent, v. CITY OF KANSAS, Appellant.

Kansas City Court of Appeals, May 24, 1886.

22 · 409
58   123

22   409
164s 608

MUNICIPAL CORPORATIONS — PROCEEDINGS TO TAKE PROPERTY FOR STREET PURPOSES—CASE ADJUDGED.—In the case of proceedings by municipal corporations to take private property for street purposes,

as for the widening of a street in this case, the corporation may be permitted to discontinue the proceedings at any time before rights resulting therefrom have become vested in the property owners. No such rights are vested until the report of the commissioners is finally confirmed, and there is a final award in the nature of a judgment in favor of the property owners for their compensation. The rights of the parties are *correlative* and have a *reciprocal* relation, the existence of the one depending on the existence of the other. When the party seeking condemnation acquires a vested right in the property, the owner has a vested right in the compensation. *Held,* That under the facts of this case, as set forth in the statement, and outlined in the opinion, the plaintiff has no cause of action.

APPEAL from Jackson Circuit Court, HON F. M. BLACK, Judge.

*Reversed.*

Statement of case by the court.

The respondent was the owner of a lot fronting thirty-one feet on Main street, City of Kansas, having a depth of one hundred and thirty-one feet. By an ordinance of the appellant city, approved August 1, 1884, entitled, "An ordinance to widen Main street from Twelfth street to a point fifty-five feet north of Tenth street," a strip of four feet off the front of the respondent's lot was included in the description of the property to be taken for street purposes. The first day of April, preceding, the respondent had commenced the erection of a building on his lot, and, at the time of the approval of the above mentioned ordinance, had constructed the foundation walls and erected the front columns. The front of this building was flush with the front line of the lot. The respondent, learning of the passage of said ordinance, at once proceeded to, and did, tear away all the front of his building then erected, and rebuilt the same four feet back from the front of his lot, at a cost of three hundred and twenty-five dollars.

The only additional step to the passage of the ordinance taken in the projected condemnation proceeding,

was the preparation of a map showing the condemnation district, which was never signed by the city engineer.

The proceedings were then, and have ever since been, abandoned by the appellant, and there was never possession taken of the respondent's strip of property, nor was he in any way disturbed in the enjoyment thereof by the appellant.

While the ordinance was pending, some person, unknown to plaintiff at the time, told him the ordinance would pass, and assumed to notify him that he would have to tear down his work and set back four feet. This person was afterwards ascertained to be the assistant city engineer. Plaintiff learned from the newspaper that the ordinance had passed the council, and proceeded to set his building back four feet, as stated. He brings this action for $1,000 damages by reason of the alleged taking of his property by the defendant. The defendant introduced no testimony, and, at the close of plaintiff's case, demurred to the evidence. The demurrer was refused, and the following instruction given for plaintiff:

"If plaintiff's lot fronted on Main street, in Kansas City, Missouri, and he commenced to erect thereon, on the line of said street, a large and permanent store-house, and subsequently the defendant passed the ordinance read in evidence, and when plaintiff was notified thereof, he discontinued his improvements on the line as commenced, and changed the building to the new line as named in the ordinance, and if the strip of ground between said lines, with the improvements thereon, was thus rendered valueless to plaintiff, and the same has been abandoned by him, and the ground has come into general use as a part of Main street, and the defendant has not, up to the date of the trial, to-wit, December 3, 1884, commenced, or caused to be commenced, any action for assessment of damages, then plaintiff's property to that extent has been taken by the defendant for public uses, and he is entitled to compensation therefor in this action."

The trial was before the court without a jury, and

judgment was rendered for plaintiff for four hundred dollars, defendant appealing to this court.

ED. L. SCARRITT and W. A. ALDERSON, for the appellant.

I.    Proceedings to condemn private property for public use may be discontinued or abandoned before the confirmation of the award, and the corporation which instituted the proceedings will not thereby incur any liability for damages to the owners of the property to be taken. *Stiles v. Middlesex*, 8 Vt. 436; *State v. Railroad*, 17 Ohio St. 103; *Curtis v. Portland*, 60 Me. 55; *In re Canal St.*, 11 Wend. (N. Y.) 154; *Railroad v. Bradford*, 6 W. Va. 220; *Bergmann v. Railroad*, 21 Minn. 533; *State v. Halstead*, 39 N. J. 640; *Pumphrey v. Baltimore*, 47 Md. 145; *In re Parade Grounds*, 60 N. Y. 319; *Gear v. Dubuque*, 20 Ia. 523; *Rogers v. St. Charles*, 3 Mo. App. 41; 2 Dill. Mun. Corp. 608; *Iallard v. Lafayette*, 5 La. Ann. 112; *St. Joseph v. Hamilton*, 43 Mo. 282; *Lackland v. Railroad*, 25 Mo. 515.

II.    Payment or tender of the compensation awarded is a condition precedent to the right of the corporation to take possession of the land.    Before the individual is entitled to any compensation, there must be vested rights, and no rights are vested until a final award and confirmation thereof, which is in the nature of a judgment.    The rights are reciprocal between the corporation and the individual. *Railroad v. Nesbit*, 10 How. (U. S.) 395; *Chicago v. Barbian*, 80 Ill. 482; *Stacey v. Railroad*, 27 Vt. 39; *State v. Hug*, 44 Mo. 116; Charter of Kansas City, art. VIII., sect. 7.

III.    Plaintiff should have *proceeded* with the building as first planned, the condition and value of his premises at the time of the award would have been considered. He tore away and rebuilt his structure at his own peril. *Sherwood v. Railroad*, 21 Minn. 122; *Baltimore v. Musgrove*, 48 Md. 272; *Feiten v. Milwaukee*, 47 Wis. 494.

KARNES & ESS, for the respondent.

I. By the action of the city, this strip was just as much appropriated to public uses as if it had been in the middle of the street. *Pumpelly v. Green Bay Co.*, 13 Wall. (U. S.) 177. There should be a liberal construction of the word taking; any substantial injury to the land is a *taking* within the meaning of the constitution. Mills on Em. Dom., sects. 30, 31; Const. Mo., art. XI., sect. 21; 2 Add. on Torts (Wood's Ed.) 247; *Glover v. Powell*, 10 N. J. (Eq.) 229; *McLaughlin v. Municipality, No. 2*, 5 La. Ann. 504.

II. Defendant, by its common council, has exclusive control over its streets and sidewalks, to open, alter, *widen*, etc. Charter Kansas City, art. III., sect. 1. And is, also, authorized to institute and conclude condemnation proceedings. Charter Kansas City, art. VIII. The property holder cannot originate the proceedings, nor in any way control them. There is no statutory remedy provided for the party injured, and the common law right of action remains unaltered. *Soulard v. St. Louis*, 36 Mo. 546.

III. If plaintiff had held possession up to the original street line, and had gone on with his building after he had notice of the passage of the ordinance, it may be questioned whether in any kind of proceeding he could have recovered for the damages in conforming it to the new line.

IV. This action is on the theory that the city, by its dealing, took away from plaintiff four feet of his ground on which there were improvements making. It was a *conversion* of real estate, and, when paid for, the title will vest, *ipso facto*, in the city. *Soulard v. St. Louis*, supra; *Mueller v. Railroad*, 31 Mo. 262; *Hickerson v. Mexico*, 58 Mo. 61.

ELLISON, J.—The law is against plaintiff's case, for the reason that the facts are against him. If the city had

done any of the acts charged against it, I agree it would be liable. If it had inflicted irreparable and permanent injury, or converted the property to the public use, an action would accrue to plaintiff, especially under our constitution, which has added the words "or damaged," to the clause forbidding the taking of private property for public use without compensation. The authorities cited by plaintiff unquestionably sustained his position. The word "taking" should be liberally construed. "It would," as is said by Judge Miller in *Pumpelly v. Green Bay Company* (13 Wall. 177), "be a very curious and unsatisfactory result, if, in construing a provision of constitutional law, always understood to have been adopted for protection and security to the rights of the individual as against the government, * * * it shall be held that if the government refrains from the absolute conversion of real property to the uses of the public, it can destroy its value entirely, can inflict irreparable and permanent injury to any extent, can, in effect, subject it to total destruction, without making any compensation, because, in the narrowest sense of that word, it is not taken for public use."

But has the defendant done any of these things ? It has only passed an ordinance preliminary to the taking of the property, this and nothing more. Conceding the assistant city engineer to have assumed to be acting in his official capacity when he notified plaintiff, it counts for nothing in this case. The ordinance had not yet been passed, and I know of no right in the engineer to notify property holders of what ordinances will be passed by the council. But this alleged notice was a mere conversation, in which the engineer gave expression to his opinion of what the action of the council would be.

The plaintiff has been the active agent in this difficulty, the defendant has been passive. The plaintiff has set his property back and has thrown the four feet of ground into the sidewalk area. The city has not demanded it of him, and has taken no part with him in it.

As I have said, the city stopped at the passage of the ordinance ; it might have proceeded much further in the process of condemnation, and yet not been liable to damages, nor fallen under the authorities cited for plaintiff. There is matter for the council to pass upon at the very end of the condemnation proceeding, in its nature judicial, which may put an end to the proceeding and leave the parties *statu quo*, which is the amount of damages that have been assessed. The council have, in reserve, the power to determine that the public good to be subserved from the appropriation of private property in a given instance, is not commensurate with the damages awarded.

"A long series of decisions," says Rapallo, J., "has established that in these street cases the corporation may be permitted to discontinue the proceedings at any time before rights resulting therefrom have become vested in the property owners. They further hold, differing, in this respect, from the English cases, that no such rights are vested until the report of the commissioners is finally confirmed and there is a final award, in the nature of a judgment, in favor of the property owners for their compensation." *In re Washington Park*, 56 N. Y, 145, 153. And the rule is thus forcibly stated by Mr. Justice Schofield : "The rights of the parties are correlative and have a reciprocal relation, the existence of the one depending on the existence of the other. When the party seeking condemnation acquires a vested right in the property, the owner has a vested right in the compensation." *Chicago v. Barbian*, 80 Ill. 482, 487. "The right to the compensation is complete when the right of the public is complete." *Harrington v. Commissioners*, 22 Pick. 268.

The principles announced and maintained by the preceding quotations, are also supported by the decisions of the courts of this state. "I have no doubt," said Wagner, J., "that the city may dismiss its proceedings at any time before final judgment, * * * and then the only liability that would be incurred would be the

expenses. So, if on account of excessive damages, it should be deemed unwise or impolitic to proceed, it might abandon the work. * * * If the city elects to abandon the enterprise, and not to take the property, there is no divestiture of title from the owner, and he is not entitled to pay from the public." *City of St. Joseph v. Hamilton*, 43 Mo. 282. This case was afterwards affirmed in *State ex rel. Rogers v. Hug*, 44 Mo. 116.

I am of the opinion the plaintiff has no cause of action, and the judgment, with the concurrence of the other judges, will be reversed.