THE STATE OF MISSOURI at the Relation of FRANK
  HARRISON et al, Appellants, v. G. W. HILL et al.,
  Respondents.

**St Louis Court of Appeals. Opinion Filed May 25, 1923.**

1. **DRAINS AND DRAINAGE DISTRICTS: Drainage Laws: Code in
   Themselves.** The drainage laws (article 9, chapter 28, Revised
   Statutes 1919) are a code of procedure in themselves and are to
   be so regarded and enforced.

2. ————: **Levees: Reclamation Plans: Amendments: Amended Plans
   Approved by Court: Commissioners May Submit Another Plan With-
   out Carrying Out Amended Plan.** Under section 4636, Revised Stat-
   utes 1919, after an original plan of drainage has been amended as
   provided therein, and a decree of court obtained approving that
   plan, etc., it is within the power of the commissioners to submit a
   second amended plan without carrying into effect the first amended
   plan for reclamation, which they deem in the exercise of their
   discretion to be inadequate and not feasible.

Appeal from the Circuit Court of Clark County.—*Hon.
N. M. Pettingill*, Judge.

AFFIRMED.

*Plantz, Lamet & Plantz, C. T. Llewellyn* and *John
M. Dawson* for appellants.

*T. L. Montgomery* for respondents.

BIGGS, C.—Through an application for a writ of
mandamus filed in the Clark County Circuit Court, the re-
lators being owners of land in the Des Moines and Miss-
issippi Levee District No. 1 of Clark county, Missouri,
seek to compel the respondents, the Board of Supervis-
ors of said district, to carry into effect a plan for reclaim-
ing and protecting the lands of said district from the
overflow of water so as to make them sanitary and suit-
able for agricultural purposes, which plan was approved
by the circuit court of said county.

Upon the filing of relators' petition a preliminary writ was issued and an order to show cause made upon respondents. Whereupon they filed their return, and relators demurred thereto, which demurrer was by the court overruled. Thereupon the relators refused to further plead, and they appeal from a judgment of the circuit court of said county in behalf of respondents.

The levee district referred to, containing some 11,000 acres of land in the northeastern part of Clark county, is a corporation operating and governed by the provisions of article 9, chapter 28, of the Revised Statutes of 1919, and the respondents are its duly elected and qualified Board of Supervisors.

A certain amended "Plan for Reclamation" was adopted by the Board of Supervisors, who in December, 1919, under the provisions of section 4636, filed a petition in the circuit court of Clark county, asking that court's permission to amend, change and modify the original Plan for Reclamation of the lands of said district. Due notice was thereupon given to the landowners of the district by publication as required by the statute; certain objections were filed by some of the landowners, and the court after a hearing granted the prayer of the petition amending the said Plan for Reclamation, and entered its decree accordingly, which decree authorized the Board of Supervisors to amend, change, modify and adopt the said amended Plan for Reclamation. No appeal was taken from this decree.

Relators' petition charges, "That afterwards commissioners were duly appointed by the circuit court of Clark county, Missouri, to appraise the lands and other property to be taken and acquired within or without said district in the erection and construction of the improvements and for right-of-way and assess the amount of benefits and damages to any and all lands, railroads and other property of said district and that said commissioners proceeded to inspect and view the lands and other property in said district and on the 20th day of July, 1921, said commissioners filed their report in writing in

the office of the circuit clerk of Clark county, Missouri, and the circuit clerk gave due notice thereof by causing publications of notice for four (4) consecutive weeks in the Gazette-Herald, a newspaper published in Clark county, Missouri, to-wit: On August 5, 1921, August 12, 1921, August 19, 1921, and August 26, 1921, and that all the owners of lands, corporate and other property in said district were duly and legally notified of the filing of said commissioners' report and that only two property owners, the Chicago, Burlington and Quincy Railroad Co. and J. M. Dawson, filed objections and exceptions to the report and that thereafter on October 20, 1921, the circuit court of Clark county, Missouri, duly entered its decree approving and confirming said commissioners' report.

"That thereafter the clerk of the circuit court of Clark county, Missouri, transmitted a certified copy of the decree of the circuit court therein and a copy of the Commissioners' report as approved and confirmed by the circuit court of Clark county, Missouri, to the Secretary of the Board of Supervisors of the Des Moines and Mississippi Levee District No. 1, as required by provisions of section 4613, Revised Statutes 1919.

"That all the necessary procedure and the assessment of benefits and damages under and pursuant to said amended "Plan for Reclamation" have been done and performed, but that respondents have neglected to further proceed with the improvements set forth and contained in said amended "Plan for Reclamation" and failed to have the Secretary of the Board to m ake and transmit a certified copy of the decree of circuit court of Clark county, Missouri, confirming the Commissioners' report to the Recorder of Deeds of Clark county, Missouri, as provided by section 4613, Revised Statutes 1919, and also respondents refuse to levy the tax on such portions of the land of the district upon which benefits were assessed by the board of commissioners as approved by the circuit court of Clark county, Missouri, as provided by section 4615, Revised Statutes 1919, and

said board of supervisors, the respondents, herein re-
fuse to perform any and all acts to complete the con-
structions and carrying out of the amended "Plan for
Reclamation" as is provided by article 9, chapter 28,
Revised Statutes of Missouri, 1919."

As the relators' demurrer was overruled to the
return of the respondents, the said return is set out here
in full, and is as follows:

"Now come the said G. W. Hill, George Cannon,
Henry D. Voss, Jr., Joseph Woods and Samuel Ham-
mond, and for their return to said writ of Mandamus,
and admit:

"That the Des Moines and Mississippi Levee Dis-
trict No. 1, was and is a drainage district, duly organized,
incorporated and existing under and by virtue of article
9, chapter 28, Revised Statutes of Missouri, 1919.

"Admit that they are and for some time past have
been the duly elected, qualified and acting members of
the Board of Supervisors of said Drainage District

"Admit that an amended Plan for Reclamation
named in the petition and alternative writ was adopted
by the Board of Supervisors and approved by the court,
and thereafter commissioners' report was duly made and
filed in the cause, and commissioners' report was ap-
proved as stated in the petition, and a decree awarded
therein. Respondents say that thereafter at the annual
meeting of the landowners of defendant levee district,
called and held on the 18th day of February, 1922, no-
tice of which was duly published according to law, in
the Free Press, a newspaper published twice-a-week at
the city of Kahoka, in Clark county, Missouri, and hav-
ing an extensive circulation in said district, notifying
the landowners of said district of the time and place
and the propositions to be presented at the annual meet-
ing and in addition to the regular order of business of
said annual meeting in said district, it was expressly set
out in said notice as one of the propositions to be pre-
sented, as follows, to-wit:

" 'The board desires that all landowners be present to express their wishes as to whether the board shall at this time begin and complete the amended plan for reclamation which has been adopted by the board and approved by the circuit court.'

"That said notice was published in said newspaper for two weeks successively, as approved by section 4600, Revised Statutes of Missouri, 1919, notifying the landowners of said annual meeting, and at said annual meeting there was a large attendance of landowners of said district.

"At the said meeting of the landowners of said district duly called as aforesaid, and regularly held, after a full discussion by the landowners assembled, of the said amended plan, on a vote taken on the proposition to adopt or reject the said Amended Plan for Reclamation, the vote stood unanimously, that is 5082 to reject said plan, and not one single vote of the landowners was recorded for it. The defendants say as a board, they feel that they ought to recognize the vote of the landowners as well as their own idea regarding the amended plan for reclamation, and after mature deliberation, and a full and complete understanding, are opposed to the present amended plan for reclamation of the district, and at a meeting of the Board of Supervisors held on July 10, 1922, the Board of Supervisors of said Des Moines and Mississippi Levee District No. 1, passed the following resolution:

" 'Whereas, by vote of the landowners of Des Moines and Mississippi Levee District No. 1, at the annual meeting held February 18, 1922, the present plan for reclamation has been disapproved and rejected, and

" 'Whereas, the Board of Supervisors concur in that view of it, and are desirous of lessening the expense of the improvements to be made in reclaiming the lands of the district, if found practicable and proper to do so, and

" 'Whereas, it is believed that the same results can be accomplished without the expenditure of the money necessary to be expended on the present plan of reclamation of the district, and

12—211 M. A.

" 'Whereas, it is believed by the Board of Supervisors of the district that a better plan can be provided for the district.

" 'Be it further resolved by the Board of Supervisors of the Des Moines and Mississippi Levee District No. 1, that Chauncey J. Weinger, of Memphis, Missouri, civil engineer, be, and he is hereby appointed as chief engineer of the district, with instructions to examine the present plan, maps and profiles, and make such or any necessary preliminary surveys with a view of determining upon the best plan for reclamation of said district, and that he consult with the Morgan Engineering Company, of Memphis, Tennessee, as consulting engineers of the district, and ascertain the efficiency and cost of the present plan and advise and report to the board after conferring with it a feasible, adequate and efficient plan for reclamation of the district.

" 'That the work be entered upon at once, and a conference with the board be had with a view to change the plan for reclamation of the district, if ascertained to be advisible as soon as conveniently practicable to do so.'

"That at said meeting the defendants as a Board of Supervisors employed the engineers, and said engineers have been making the necessary surveys of the district, and that said engineers have been preparing the data in the nature and with the view of proving the effectiveness, as well as the practicability, cost and adaptability of the amended plan of the district, at the same time have been engaging in preparing data with the view of suggesting to the defendants as a board of supervisors of said district, a better plan for drainage of said district, and at this time said engineers are about to report to the board the result of said surveys and their conclusions thereon.

"Respondents further say that the expense of constructing and installing the amended plan is too expensive for the district to undertake, the said expense as estimated amounts to the sum of $260,000 and in addition thereto, provides there is to be added thereto the

constantly increasing cost of pumping, there being no provisions therein for gravity drainage. The said amended plan provides for storing the water in the district at the cost for Storage Basin of about fifty-five thousand dollars ($55,000).

"Defendants say, in further explanation of their position and in justification of their action herein that some of the many objections to the amended plan sought to be put into effect by plaintiffs are as follows, to-wit: That the cost of the amended plan of drainage should be reduced by:

"(1)    Gravity discharge when Fox River is low.
"(2)    Natural drainage or gravity drainage for one-half the district through a high line drainage canal.
"(3)    By taking advantage of present and natural drainage ditches within the district the hill water can be taken care of by taking it through the district at a cost of twenty thousand dollars, making a saving to the district of thirty-five thousand dollars.
"(4)    The cost of the pumping plant in the amended plan is placed at $72,344. This is excessive for a district of this size considering area drained and high waters of Mississippi and Fox Rivers. This cost can be reduced one-half by using the above named high line drainage canal.
"(5)    From available data an economical pumping plant for said district can be designed and built at a cost not exceeding thirty thousand dollars.
"(6)    The Storage Basin method of taking care of the hill water has several serious objections and the method is not practical.
"(7)    Some of the ditches are too deep and the grade lines are therefore not economical.

"The defendants say that the foregoing expenditures were made by them in the exercise of their sound discretion in the premises, in good faith, for the pur-

pose aforesaid, and for no other purpose.

"Respondents say that they have not proceeded to levy the taxes on the lands of the district named in the petition, because it is the best judgment of the respondents that said amended plan is not practicable, is too expensive; that a change or substituted plans should be provided for said district. That they are informed and believe that a plan can be devised and provided that will reclaim the lands of the district, that will be more practicable and accomplish better results. That when these proceedings were instituted respondents were causing to be prepared a plan of drainage for said district, which they propose to submit to the court, which they believe will commend itself to the court, when submitted, and in doing so they are using their best judgment, in good faith, to try to reclaim the lands in the district in the most effective way, and at the least possible costs for the plans of the district at the time of the construction thereof and after it has been carried into effect, that for this reason and the reasons hereinbefore set out in this return, and for no other reason the taxes mentioned and described in the petition have not been levied and assessed against the lands in order to carry out the plan for said district.

"Respondents deny that they have failed and refused to have the meetings of the Board of Supervisors to attend to the business of the district, but aver the fact to be that they have at all times had and held regular meetings of the board, and called meetings thereof whenever the business of the district demanded attention. And that they have given the same attention to the best of their knowledge and ability and have recently devoted their attention to, providing for a changed or amended plan of reclamation for said district, because of the facts heretofore set out in this opinion, and say that long before and after the date of the annual meeting of the landowners held February 18, 1922, the relator Charles Winkleman and other relators attended the meetings of the board at all times, endeavoring to per-

suade and intimidate and induce the respondents herein, as a Board of Supervisors to recommend and to carry out the amended plan for reclamation. At such times he would abuse and insult the board and the individual members thereof, and became so persistent and abusive as to interfere with the transaction of the business of the board, and at these times, respondent G. W. Hill, being opposed to the amended plan for reclamation, did absent himself in order to avoid the abuse of said Winkleman, and to prevent serious difficulty; that the said Winkleman was so persistent and abusive as to become a nuisance and disturbance of the peace of the deliberations of said board meetings, and respondents did not care to be annoyed by him, and have held their meetings by agreement at such time and place as to avoid being annoyed by him and other relators.

"Respondents say that the accounts of the Treasurer and the Minutes of the Board of Supervisors are kept in such manner that any landowner may examine the same and ascertain the condition thereof at any and all times and no demand has been made to the board for any statement other than the books and minutes contained or said demand would be complied with at once. The relators are now very persistent in raising these vexatious questions at this time and the board believes that the same are being raised for the sole purpose of interfering with the vowed purposes of the board to submit to this court a changed or substitute plan herein, and not in good faith for any other purpose.

"Respondents say that the books, vouchers, papers, and minutes have been duly audited by the Hon. Harry Hall, of Lancaster, Missouri, an Auditor duly appointed by this court up to the year 1920, and the audit has been filed with the clerk of the circuit court of Clark county, Missouri, which is a public record of the transactions of the board.

"The respondents say that at this term of the court the attorneys who formerly represented the respondents herein, the Board of Supervisors of Des Moines and Mis-

sissippi Levee District No. 1, in procuring the amended plan for reclamation, and who now represent relators herein, in order to defeat the known object and purpose of respondents in preparing a substitute or change plan for reclamation to be presented to this court have prepared and brought suits against respondents, returnable to this term of court, to-wit, four separate and distinct suits against respondents as individuals.

"(1)    By Frank B. Harrison for $5000 damages for failing to protect his land by carrying out the amended plan for reclamation.

"(2)    An injunction suit in which relators and numerous landowners join.

"(3)    Mandamus in which particularly the same relators join, and

"(4)    The present suit.

"Respondents charge and aver that these suits are vexatious and brought for the purpose of ultimately defeating the reclamation of the lands in said district, and not in good faith."

The conceded question for determination is whether under our drainage law the Board of Supervisors of a district has the power, after having submitted to the circuit court as provided in the act, an amended plan for reclamation and secured the court's decree permitting it to amend the plan as prayed, to thereafter, without carrying out the said plan by levying a tax and doing the work, again submit to the court another plan for reclaiming the lands of the district. That question involves a construction of the provisions of the drainage law referred to (art. 9, chap. 28, R. S. 1919) under which the district is operating.

That act first provides a method of incorporating a levee district by a decree of the circuit court, after a hearing and giving to the landowners the right to file objections. [Sections 4597, 4598 and 4599, R. S. 1919.]

Section 4600 provides for the election of a Board of Supervisors.

Section 4602 provides that the article is hereby declared to be remedial in character and purpose, shall be

liberally construed by the courts in carrying out the legislative intent and purpose, etc.

Section 4606 provides for the appointment of an engineer, designating his duties; and by section 4607 the engineer and the board shall submit to the circuit court upon the original incorporation of the district a plan for reclamation.

After the organization of the district, the said act by section 4609 provides for the appointment of Commissioners to assess benèfits and damages accruing to the lands in the district, which Commissioners file their report in the circuit court. Thereupon notice is given by publication provided by section 4612. And by section 4613 provision is made for exceptions to the said report by the landowners, and the court thereupon after a hearing, either approves or disapproves said report. By section 4613 an appeal is provided from the judgment of the court upon the following questions: First, whether just compensation has been allowed for the property appropriated; and second, whether property damages have been allowed for property prejudicially affected by the improvements.

After the approval of the report of the Commissioners, the Board of Supervisors shall without any unnecessary delay, levy a tax upon the property of the district to which benefits have been assessed. [Section 4615.]

Section 4636 provides the manner of changing the plan of drainage and provides that "The Board of Supervisors . . . shall have the right to file a petition in the office of the clerk of the court organizing the district praying the court to amend its former decree incorporating the district, by correcting the names of landowners, etc., . . . or in any other manner amend its decree; said petition may ask permission of the court for said board to amend or change 'the plan for reclamation,' or to correct any errors, omissions or other mistakes that have been discovered in 'the plan for reclamation.'" Section 4636 then provides for a hearing upon said amended plan, after notice to the landowners, who

may file objections. Provision is also made for the appointment of Commissioners to assess the benefits and damages, as is provided when the district is originally formed.

In construing these drainage laws our Supreme Court has ruled that they are codes of procedure in themselves and are to be so regarded and enforced. In Drainage District v. Ackley, 270 Mo. 157, 192 S. W. 727, it is said:

"The drainage act is a separate and distinct statute. Since the various amendments thereto it is a complete code unto itself. Not being placed in the statute under the Civil Code of Procedure, it is independent of it and is not governed by it. Consequently the procedure thereunder is not as in an ordinary civil case within the meanng of the Code of Civil Procedure and is not governed by it."

This case has been approved in other cases. [State ex rel. v. Dawson, 284 Mo. 490, 225 S. W. 97; Elsberry Drainage District v. Meyers, 284 Mo. 490, 209 S. W. 913; Pemiscot County v. McCarty, 276 Mo. l. c. 537, 538, 208 S. W. 450; State ex rel. Norborne Land D. D. Co. v. Hughes, — Mo. —, 240 S. W. 802, l. c. 805, Col. 2; State ex inf. McAllister v. Norborne, — Mo. —, 234 S. W. l. c. 348; In re Yellow Creek Drainage District, 240 S. W. 204, Col. 2; In re Drainage District, 280 Mo. 1, 216 S. W. 530.]

It is argued by relators that because of the fact that the Board of Supervisors of the district submitted one amended plan to the court and secured a decree approving that plan and had Commissioners appointed, who filed their report, assessing the damages and benefits, that this constituted a final judgment and must be first carried into effect by the Board of Supervisors, by levying a tax and doing the work, before any change or modification is made by another amended plan for reclamation. This argument appears to be unsound. It would apply with equal force to the first amended plan for reclamation, for when the district was incorporated

a plan was submitted, which was approved and Commissioners were appointed, who assessed benefits and damages.  If relators' position should be upheld, it might follow the Board of Supervisors would be compelled to carry into effect a plan for reclamation which was found through some error or mistake was wholly inadequate and not feasible, and which would not benefit the lands, but actually damage them.  The object of the law is to provide an adequate and feasible plan for reclaiming the lands.  The statute should be flexible in that regard.  The particular plan to be adopted is provided by the Board of Supervisors, assisted by the engineer, who secure the approval of the said plan by the circuit court after a hearing given to the landowners.  The board necessarily exercising a discretion in providng the plan to be adopted.

In the present case the Board of Supervsors by their return have set out the reasons for their action in the matter of refusing to carry out the first amended plan and are proceeding to submit a new plan to the circuit court, when the property owners will have an opportunity to be heard thereon, and which they declare in their judgment to be a better plan, more feasible, and less expensive.

We think that under the provisions of section 4636 of the drainage law, after an original plan of drainage has been amended as provided therein, that it is within the power of the Commissioners to submit a second amended plan, and that they should not be compelled by mandamus to carry into effect the first amended plan for reclamation, which they deem in the exercise of their discretion to be inadequate and not feasible.  Whatever the plan adopted may be, the landowners under the statute have the right to a hearing and their day in court.

The judgment of the crcuit court should be affirmed.

PER CURIAM:—The foregoing opinion of BIGGS, C., is adopted as the opinion of the court.  The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.,* concur.