JOHN J. HAMILTON, Plaintiff, Respondent, v. BIG MEDICINE DRAINAGE DISTRICT No. 1, Defendant, R. A. LINDBLOM, Interpleader, Appellant.*

In the Kansas City Court of Appeals, May 5, 1924.

EMINENT DOMAIN: Damages: Deeds: Conveyance of Land Made Subsequent to Award, but Before Payment, not Reserving Damages Assessed, Held That Right to Damages Passed to Purchaser. In an action to recover amount of damages awarded by condemnation jury

*held* under sections 4405 and 4416, Revised Statutes 1919, and article 2, section 21, of State Constitution, that a conveyance which did not reserve damages assessed or awarded in condemnation proceedings made and delivered after award, but before payment, the right to such damages passed to the purchaser although prior to deed conveying the land, commissioners of drainage district went upon the land and surveyed the route and fixed location where ditch was to run, and even though pendency of condemnation proceeding injured salability of land and price that could be procured for it.

*Headnote 1. Eminent Domain, 20 C. J., Section 292.

Appeal from Circuit Court of Sullivan County.—*Hon. J. E. Montgomery*, Judge.

REVERSED AND REMANDED (*with directions*).

*D. M. Wilson, C. H. Ewald* and *Mertsheimer & O'Donnell* for appellant.

*Calfee & House* and *A. L. Burns* for respondent.

BLAND, J.—This is an action brought by plaintiff against defendant to recover the amount of damages awarded by a condemnation jury, the damages also being claimed by the interpleader Lindblom.

The district filed an answer requesting the court to require the parties and one Stoltzman to interplead, which was done, Stoltzman disclaimed any interest in the fund and a decree was entered adjudging the money to plaintiff. Interpleader Lindblom has appealed.

The facts show that defendant, the Big Medicine Drainage District No. 1 was organized in 1920 and in due time proceeded to lay out, survey, condemn and appropriate a certain right of way for a drainage ditch across lands owned by plaintiff. The commissioners assessed damages in the sum of $1212 in favor of plaintiff which assessment was confirmed by the circuit court while plaintiff was the owner and in possession of the land. There-

after on April 1, 1922, plaintiff conveyed the property to Stoltzman, who on October 16, 1922, conveyed it to the interpleader Lindblom. These deeds contained no reservation of the damages assessed or awarded in the condemnation proceeding. This suit was brought on June 5, 1923. The money was not paid into court for the bene- fit of the parties entitled to it until July 24, 1923. During the month of May, 1923, the drainage district entered upon the land for the purpose of constructing a drainage ditch upon and across it. However, prior to the time of the deed by plaintiff to Stoltzman, the district went upon the land and surveyed the route and fixed the location where the drainage ditch was to run.

Interpleader Lindblom claims the fund because he was the owner of the land at the time of the entrance upon it by the drainage district to construct the ditch, at which time it is claimed the actual damage occurred, and the deed conveying the land to him did not reserve the damages assessed. On the other hand, plaintiff claims the fund on the ground that when the assessment of damages was made by the commissioners its approval by the court amounted to a final judgment unappealed and personal to plaintiff.

Section 4405, Revised Statutes 1919, which appears in the drainage act, provides as follows:

"The board of supervisors of drainage districts organized under this article shall not have the right to enter upon or appropriate any land for rights of way, holding basins or other works of the districts until the prices awarded to the owners of such land shall have been paid to such owners or into the hands of the circuit clerks of the courts organizing such districts for the use of such owners; and if the sum awarded be not so paid within five years from the date of filing the commissioners' reports, all proceedings as to the taking of such property for rights of way, holding basins and other works not so paid for shall abate at the cost of said dis- trict. Whenever any land is acquired by any district

under the provisions of this article and the price of such property has been paid the owner by the district, the title, use, possession and enjoyment of such property shall pass from the owner and be vested in the district, and subject to its use, profit, employment and final disposition. The price awarded for all land acquired by any district for rights of way, holding basins, or other works and the amount of damages assessed by the board of commissioners and confirmed by the court to any tract or parcel of land or other property in the district, shall be paid in cash to the owner thereof or to the clerk of the court for the use of such owner, and that portion of any tract or parcel of land or other property not taken for use of the district shall be assessed for the benefits accruing in accordance with the provisions of previous sections in this article.''

Section 4416, Revised Statutes 1919, among other things, provides that the court may change the boundary lines of the district so as to include other lands; it may amend its former decree of incorporation and the decree confirming the report of the commissioners by correcting the name of the landowner and making other corrections and may amend the plan of reclamation to correct mistakes, etc.

The general rule is stated by Corpus Juris as follows:

''Where land is sold subsequent to the award, but before payment is made or security given by the condemnor, and the conveyance is silent as to the right to damages, such right passes to the purchaser.'' [20 C. J. 862.]

This is a good statement of the law, at least so far as this case is concerned, in view of the provisions of the drainage act. That act contemplates that the judgment confirming the report of the commissioners assessing damages shall not be final for the reason that it provides that the district shall have five years after the filing of the report to determine whether it desires to pay the

damages awarded, and section 4416 provides for changing the district plan so as to extend the boundary line, and amending the decree of incorporation. The whole proceeding might have been abandoned and the land of plaintiff not acquired or damages even after the proceedings had reached the point it had attained at the time of the entry of the judgment confirming the commissioners' report. [State ex rel. Harrison v. Hill, 253 S. W. 448.] Section 4405, Revised Statutes 1919, also provides that the title, use, possession and enjoyment of the property shall not pass from the owner and be vested in the district until the price of such property has been paid the owner by the district, which price shall be paid in cash to the owner or to the clerk of the court for his use. It also provides that the district shall not enter upon or appropriate any land for rights of way, holding basins or other works of the district until the price awarded to the owners of the land shall have been paid to such owners or is in the hand of the circuit clerk. The constitution of the State (Art. 2, sec. 21) provides that the property shall not be disturbed or the proprietary rights of the owner therein divested until compensation shall be paid to the owner or in court for his use.

It is quite apparent that at the time plaintiff conveyed the property, as well as at the time his grantee conveyed it to the interpleader, the title to or possession of the property had not been disturbed, and the damages awarded under the pending proceedings not having been reserved by plaintiff or his grantee in their deeds, the interpleader is entitled to such damages. [Land & Improvement Co. v. Kansas City, 293 Mo. 674; Silvester v. City of St. Louis, 164 Mo. 601; State ex rel. v. Hug, 44 Mo. 116; City of St. Joseph v. Hamilton, 43 Mo. 282; Simpson v. Kansas City, 111 Mo. 237, 242; Kansas City v. Railroad, 189 Mo. 245, 258, 259; Whyte v. City of Kansas, 22 Mo. App. 409; Kiebler v. Holmes, 58 Mo. App. 119.]

It is not necessary for us to hold whether the right to the damages became fixed at the time the money was paid into court or at the time of the entry by the drainage district upon the land for the purpose of constructing the drainage ditch, for the reason that both of these occurred after the interpleader became the owner. The fact that during the time that plaintiff was the owner the drainage district went upon the land and fixed a route for the location of the drainage ditch, did not constitute a taking of the property. Of course, this was before any condemnation proceedings were started and if any damages occurred to plaintiff by reason of this entry upon his premises, he could recover the same in a suit brought by him for that purpose, if the entry was unlawfully made without his consent.

It seems to be plaintiff's theory that the judgment confirming the commissioners' report was a final judgment, personal to him, and he was entitled to the amount of damages awarded therein regardless of any other consideration. Such a judgment is not final in the sense that plaintiff insists. Silvester v. St. Louis, supra, l. c. 608, quotes approvingly from Dillon on Municipal Corporations, commenting upon an act permitting the City of Baltimore to procure a supply of water and authorizing the city to condemn lands and providing that the city should have title to the land when the inquisition of damages was returned to the circuit court and confirmed by that court and was paid or tendered to the owner. Commenting upon the holding that the city could abandon the location in question, the author uses this language, ". . . *the judgment of confirmation simply decided the value of the land,* and that payment or tender of the valuation is necessary to give the city a title to the property." As to the finality of the judgment, see also State ex rel. v. Hill, supra, l. c. 452. In the Silvester case the court said, l. c. 608—

"Where the city chooses to abandon the enterprise or declines to take possession or make use of the prop-

erty, there is no divestiture of the title from the owner, and he is not entitled to pay therefor from the public. It is, therefore, entirely discretionary with it whether it will pay the damages assessed and take the property or abandon it altogether. Condemnation proceedings for public uses could not be prosecuted in cities upon any other theory, for in many cases juries might award damages so exaggerated as to render it impossible for them to do so, hence the right is accorded them of refusing to take the property or pay the damages assessed if it feels disposed to do so.''

Plaintiff cites Hilton v. St. Louis, 99 Mo. 199, Plumb v. Kansas City, 101 Mo. 525, and Martin v. City of St. Louis, 139 Mo. 246. These cases involved condemnation proceedings under laws different from the drainage law here in question. As said in In re Drainage District; Buschling v. Ackley, 270 Mo. 157, 173—''The drainage act is a separate and distinct statute. Since the various amendments thereto it is a complete code unto itself.'' Hilton v. St. Louis, supra, was a suit brought to recover the damages assessed under condemnation proceedings to open a street in the city of St. Louis. There was no question involved of the right of the city to refuse to go ahead with the proceeding after the assessment of the damages. The facts show that the city in that case had appropriated the money to pay the damages before the plaintiff became the assignee of the rights of the owner of the property. It is not clear whether the money was paid into court after or before the transfer to plaintiff. There was a controversy as to whom the money belonged. The court stated, l. c. 208, that it was impossible to ascertain just what the *status* of plaintiff Hilton was—''if Hilton was only the purchaser of the lots subsequently to damages being assessed, such damages would not pass to him by the deed of Tanner if he received one even though such damages were not specially reserved in the deed.'' In that case the city had elected to go ahead with the proceedings and there was no question

involved as to whether the condemnation proceedings were merely *in fieri.* But plaintiff makes much of the language we have quoted from in that opinion. However, that language should be construed in connection with what was being decided in that case. There plaintiff Hilton had made no allegations of his own nor had he introduced any evidence to his title or to his claim. What the court meant by the use of the words "damages being assessed" does not appear. Evidently it meant after the damages had been assessed without any right of the city to withdraw from the proceedings. Even if the language is as broad as it appears on its face and plaintiff claims it to be, that case is not in point in the case at bar, for the reason that the Supreme Court in Silvester v. St. Louis, supra, and Land & Improvement Co. v. Kansas City, supra, decided since that case, held that under circumstances similar to those present in the case at bar, where the condemnor has a right to withdraw the proceedings after the damages have been fixed, the title has not passed to the condemnor and the judgment assessing damages is not a final judgment.

Plumb v. Kansas City, supra, was an action enjoining the city from taking possession of a parcel of land condemned for a public street until the payment of appropriate compensation had been made therefor. In that case there was no question of the city having an election not to go ahead with the proceedings and the statutory provisions were not like those in the case at bar. It was held in that case that the city should tender interest from the date of the judgment of condemnation in order to take possession of the land, and the question before the court was whether the judgment of condemnation was such a judgment as the general statute relating to judgments provided should bear interest. Plaintiff herein makes much of the language used by the court on page 531, as follows:

"By the statute before us (the condemnation statute) the adjudication is expressly denominated a 'judgment,'

and its effect is clearly such.  It passes the record title, and adjudges that the city pay the full compensation fixed as the equivalent therefor.''

In that case the verdict of the jury in the mayor's court assessing compensation for the taking of plaintiff's property had been confirmed by the common council. Both plaintiff and the city were satisfied with the assessment made but the case was appealed by other parties. Ultimately the judgment of condemnation in the circuit court was affirmed and the municipal authorities tendered plaintiff the amount of the judgment together with a small sum as interest, which fell short of the statutory rate of six per cent upon the judgment from the time of its rendition.  The proceeding was merely to determine whether the interest should run from that time.  The judgment referred to by the court in the language quoted was the judgment of the circuit court.  The court recognized, l. c. 532, that there are statutes making such judgment merely tentative or expressly or impliedly postponing their final effect, but it was held that the judgment in that case was not such a one.  Of course, as we have already stated, the judgment confirming the commissioners' report in the case at bar was not a final one, but its final effect was postponed until the conditions provided by section 4405 were complied with.

Martin v. St. Louis, supra, was a suit to recover interest upon the amount of damages assessed in a suit to condemn property for a street in the city of St. Louis. The city claimed that the person to whom the damages were due was in dispute but did not pay the money into court for the person entitled to the same.  It finally appeared that plaintiff's deceased was the owner of the land.  The commissioners had assessed the damages, filed their report, and the report was approved by the municipal assembly and final judgment entered by the court vesting the title to the land in the city of St. Louis on condition that the city first pay over the amount of damages awarded by the commissioners.  Plaintiff's de-

ceased demanded the money but the city refused to pay it. It was held that plaintiff was entitled to interest from the date the judgment of condemnation for the reason that the city did not pay the money into court, or to the owner whoever he might be, and refused to pay the money upon demand. In that case the city had elected to go ahead with the proceeding making it quite different from the case at bar. None of the three cases cited by plaintiff involved the many plain provisions contained in the drainage statute showing that the finality of the judgment confirming the commissioners' report is postponed.

Some argument is made that the damages should go to plaintiff owing to the fact that the pendency of the proceedings naturally injured the salability of the land and the price that could be procured for it. There is no evidence of what either plaintiff or Stoltzman received for the property or what they would have obtained had the condemnation proceedings not been pending. However, even if there were such evidence showing a loss to them, it would make no difference. That matter was fully discussed in Land & Improvement Co. v. Kansas City, supra, l. c. 680, where the court said—

"From what has been said it must be reasonably clear that the condemnation proceeding and the judgment therein merely hampered respondent in the use of its property; they did not deprive it of ownership, and it was the ownership, primarily, and not the productiveness, or the unfettered use of the property, that gave rise to respondent's liability for the payment of the tax."

The question in that case was whether the title had passed so that plaintiff was not required to pay taxes upon the property after the judgment of condemnation had been entered. The city had the right under its charter to abandon the contemplated improvement by repealing the ordinance providing therefor at any time before the judgment for benefits was paid. [See also Brunn v. Kansas City, 216 Mo. 108, 119, 120.]

In re Woods Estate.

The judgment is reversed and the cause remanded with directions to the lower court to enter a decree awarding the fund to the interpleader Lindblom. All concur.